## Truitt v. Philadelphia, Appellant.

221    331
137SC    530

*Municipalities—Cities of the first class—Public officer—Superintendent of squares—Removal from office—Civil service law—Act of March 5, 1906, P. L. 83.*

No officer, clerk, employee or laborer in the civil service of the city government of the city of Philadelphia can be appointed, transferred, reinstated, promoted or discharged in any manner or by any means, other than those provided in the Act of March 5, 1906, P. L. 83.

The civil service Act of March 5, 1906, P. L. 83, relating to cities of the first class is a constitutional exercise of legislative power, and officials appointing to, or removing from, office or employment are required to comply strictly with the provisions of the statute. Neither the court nor the officials in whom is lodged the power of appointment and removal can have any concern with the policy of law, or the reasons for its enactment. These are questions which are solely for legislative consideration.

The purpose of the legislature in passing the act was, as its title shows,

"to regulate and improve the civil service of the cities" to which it applies, and thereby obtain for the city faithful and efficient employees and protect them from removal for religious or political reasons.

The only ground which authorizes a removal from the service is a "just cause," and before the employee can be deprived of his position that must be made to appear. The cause sufficient to warrant a removal must be personal to the employee and such as to render him unfit for the position which he occupies.

Before the removing officer can exercise his authority to dismiss the employee from the service, he must state specifically in writing the cause or causes of the unfitness or incompetency of the employee to perform the duties of his appointment. This is a condition precedent, imposed by the statute before the removal can be made. It is mandatory, and the failure of the officer to observe this provision will render the employee's removal as abortive as if no cause had been assigned.

The removing officer not only must assign his reasons in writing, for his intended action in dismissing the employee, but, before acting, he must also give to the employee an opportunity to answer the charges preferred against him. If he can satisfactorily answer the reasons assigned for his removal, and thereby show that there is no just cause for his dismissal, the removing officer is prevented by the statute from dismissing him from the service.

A letter addressed by the director of public safety of a city of the first class to the superintendent of a square, notifying the latter of his dismissal from his position "for the betterment of the service," is not a sufficient "written statement of the reasons," for the dismissal within the meaning of the statute. Such a statement defeats the purpose of the act in denying to the employee an opportunity to answer his accusers, by failing to disclose the accusations against him.

Where a petition for a mandamus and reinstatement to office avers that the plaintiff was not furnished a statement of the reasons for his dismissal and given an opportunity to answer them as required by the statute, and the answer to the petition without admitting or denying the averment in the petition avers certain causes for the removal, the petitioner in his demurrer to the answer does not admit the truth of the charges contained in the answer inasmuch as they are not facts material or relevant to the issue.

It is not sufficient for the removing officer to dismiss an employee from the service without assigning a cause, and, when subsequently brought into court on a demand for his reinstatement, to assign the cause. The statute does not so provide, and hence the court cannot sustain such an answer by the removing officer to an alternative writ of mandamus. Until the employee has been confronted with the charge and has been afforded an opportunity to give a written answer, the removing officer cannot declare that a just cause of removal exists.

The court will not refuse to reinstate the petitioner because such reinstatement would be a vain thing, inasmuch as the removing officer will remove him for the causes stated in the answer. If the court should refuse reinstatement for such reason, it would assume that the removing officer would not in good faith, and as required by his official oath, make a full and fair investigation of the charges preferred against the plaintiff, and base his subsequent action in removing or in refusing to remove him solely upon the facts as disclosed by the investigation.

MITCHELL, C. J., dissents.

Argued April 1, 1908. Appeal, No. 18, Jan. T., 1908, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1907, No. 4,709, awarding mandamus in case of Harry W. Truitt v. City of Philadelphia, John E. Reyburn, Mayor, and Henry Clay, Director of Public Safety. Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Petition for mandamus. Demurrer to answer.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in sustaining the demurrer to the answer.

*Thomas D. Finletter*, with him *J. Howard Gendell*, for appellants.—The limitation upon the right of the appointing power to discharge is exceptional and in derogation of the general rule, and should be strictly construed.

Where this limitation is a requirement of the filing of "written reasons" for discharge, great liberality should be allowed in the statement of "reasons": Koontz v. Franklin County, 76 Pa. 154; Com. v. Bacon, 6 S. & R. 322; Barker v. Pittsburg, 4 Pa. 49; Hawkins v. Com., 76 Pa. 15; Philadelphia v. Fox, 64 Pa. 169; Com. v. Moir, 199 Pa. 534.

The appointing power has always been held to include the power of removal. Unless there is a legislative restriction, the right of the appointing power to dismiss the subordinate rests only with the pleasure of the former. The power of removal is inherent in the power to appoint: Houseman v. Com., 100 Pa. 222; People v. Controller, 20 Wend. 595; People v. Fire Commissioners, 73 N. Y. 437.

It cannot be doubted that the causes stated in the answer

filed amply justify a discharge. It is established by the authorities that a statement of " reasons for discharge " is incontestable by the plaintiff, and that his discharge will be complete on the filing of such a statement of reasons among the records of the civil service commission: People v. Brady, 166 N. Y. 44 (59 N. E. Repr. 701).

In the letter of October 14 the director informed Truitt that he was discharged " for the betterment of the service." In this statement practically the words of the title of the. civil service act were used.

*Wm. Clarke Mason*, with him *Franklin S. Edmonds*, for appellee.—The office of superintendent of squares in the city of Philadelphia was subject to legislative regulation, and, therefore, the plaintiff was not liable to dismissal at the will of the director of public safety, but only according to the method provided by act of assembly : Com. v. Black, 201 Pa. 433 ; Com. v. Stokley, 20 W. N. C. 315 ; Saul v. Scranton, 9 Pa. Dist. Rep. 156.

The method of dismissal provided by act of assembly must be strictly followed : Dillon on Municipal Corporations, sec. 245 ; Com. v. Black, 201 Pa. 433.

The dismissal of a superintendent of squares " for the betterment of the service " is illegal and void, as such phrase is not a " statement of the reasons for such action " within sec. 20, act of March 5, 1906 : Andrews v. King, 77 Me. 224 ; Lindblom v. Civil Service Commission, 102 Ill. App. 14; State v. Grant, 81 Pac. Repr. 795 ; Joyce v. Chicago, 216 Ill. 466 ; State v. Thompson, 97 N. W. Repr. 887 ; In re Carter, 141 Cal. 316 (74 Pac. Repr. 997); Com. v. Sutherland, 3 S. & R. 145 ; Bon Homme County v. McLouth (S. D.), 104 N. W. Repr. 256 ; Collier on Civil Service Law, p. 197 ; People v. Starks, 33 Hun, 384 ; Butler v. White, 83 Fed. Repr. 578.

The removal of the plaintiff having been illegal, he is entitled to be restored to all the rights and privileges of his office : Com. v. Black, 201 Pa. 433.

OPINION BY MR. JUSTICE MESTREZAT, May 11, 1908:

In August, 1905, Harry W. Truitt, the plaintiff, passed a successful examination before the civil service commission of the city of Philadelphia for appointment to the position of

superintendent of squares in the city, and on the eighteenth of that month was placed on the eligible list for appointment to the position.   In October of the same year he was appointed to the office of superintendent of squares by the director of the department of public safety, and was assigned to duty as superintendent of Rittenhouse square.   He continued to perform the duties of this position until October 14, 1907, when he was notified by letter from Henry Clay, director of public safety, of his "dismissal from the position of superintendent of square, bureau of city property, for the betterment of the service, the same to date from Thursday, October 17, 1907."   Since the date of this notice the mayor and the director of public safety have refused to recognize the plaintiff as a superintendent of squares, and he has been denied the right to perform the duties of such position.

On November 18, 1907, Truitt presented his petition to the court below, setting forth the above facts and praying for a writ of alternative mandamus to compel the mayor and director of public safety to place his name on the roll of superintendent of squares and to recognize him as a superintendent of squares of the city, alleging as reasons therefor that "he has been unlawfully and illegally refused the right to act as superintendent aforesaid by said Henry Clay, director aforesaid," and because the mayor and director "have failed and refused to recognize and cause to be recognized your petitioner as superintendent of squares aforesaid."   To this writ the defendants made return and filed an answer.   The answer, like the petition, contains many irrelevant and immaterial averments which need not be noticed in disposing of the case. The answer concedes the appointment and service of the plaintiff as superintendent of squares in the city as alleged in the petition.   It denies, however, that he performed his duties according to law and the rules of the department of public safety, and avers certain causes which are alleged to be sufficient to justify the plaintiff's removal from office.   It further avers that the notice given by Director Clay to the plaintiff was in full compliance with the act of assembly regulating the dismissal of employees from the civil service; and "that the said letter contains and is a written statement of the reasons for the dismissal of the said petitioner from the

said office." The answer further avers that if the court should be of opinion that the reasons for dismissal were not sufficiently explicit, the action upon the petition would be without practical effect, inasmuch as ample causes for the dismissal of the plaintiff from the office and reasons therefor exist. The learned court below awarded a writ of peremptory mandamus, President Judge WILLSON filing a clear and convincing opinion which amply vindicates the correctness of his conclusion.

The legislature of Pennsylvania passed an Act approved March 5, 1906, P. L. 83, entitled: "An act to regulate and improve the civil service of the cities of the first class in the commonwealth of Pennsylvania, making violation of its provisions to be a misdemeanor, and providing penalties for violations thereof." The act is very comprehensive and contains ample provisions regulating the subject indicated in its title. It provides that appointments to and promotions in the civil service of cities of the first class shall only be made according to qualifications and fitness, to be ascertained by examination, which so far as practicable shall be competitive. No officer, clerk, employee or laborer in the civil service of the city government can be appointed, transferred, reinstated, promoted, or discharged in any manner or by any means other than those provided in the act. Penalties are prescribed for violations of its provisions. The act was manifestly intended to make full provision for the appointment and discharge of officers and employees in the civil service of the city, and to definitely prescribe the manner of exercising such authority, as well as to protect faithful and efficient appointees against removal for a political, religious or other insufficient cause. Prior to the present act dismissals from the civil service of Philadelphia were regulated by the Act of June 1, 1885, P. L. 37, which provided, inter alia, that " the directors or chief officers of departments may by written order giving their reasons therefor, remove or suspend subordinate officers and clerks, provided the same is not done for political reasons; " and that " no policeman or fireman shall be dismissed. . . . except by the decision of a court and a trial upon charges with plain specifications and the right of the accused to be present with sworn witnesses."

The restriction or limitation placed upon the removal or dismissal of an officer or employee from the civil service of the city is contained in section 20 of the act of 1906, which is as follows : " No officer, clerk, or employee in the competitive class or in the noncompetitive class of the classified civil service of any city of the first class, who shall have been appointed under the provisions of this act, or of the rules made pursuant thereto, shall be removed, discharged, or reduced in pay or position except for just cause, which shall not be religious or political. Further, no such officer, clerk or employee, shall be removed, discharged or reduced, except as provided in section 8 of this act, until he shall have been furnished with a written statement of the reasons for such action, and been allowed to give the removing officer such written answer as the person sought to be removed may desire." The same section provides—manifestly to show the public that the dismissal has been for a sufficient cause—that " in every case of such removal or reduction a copy of the statement of reasons therefor, and of the written answer thereto, shall be furnished to the Civil Service Commission, and entered upon its public records." By section 27 of the act it is provided that all officers or employees in the service of the city on March 1, 1906, shall be construed to have been appointed under its provisions, and shall hold their offices in accordance therewith.

The only question for consideration raised by the pleadings in this case is whether Director Clay complied with the act of 1906 in dismissing the plaintiff from his position of superin· tendent of squares. The legislature had the power to pass the act in question and legislate upon the subject : Commonwealth v. Black, 201 Pa. 433, and hence officials appointing to or removing from office or employment are required to comply strictly with the provisions of the statute.

It may be suggested that neither the court nor the officials in whom is lodged the power of appointment and removal can have any concern with the policy of the law or the reasons for its enactment. Those are questions which are solely for legislative consideration, and neither the court nor the officials can be permitted to question or deny the authority of the legislature to pass upon and determine them. The duty of the officer in appointing to or dismissing from the service

of the city is to comply with the statute and in good faith yield obedience to its provisions, so that the intention of the legislature may be fully carried out. The purpose of the legislature in passing the act was, as its title shows, " to regulate and improve the civil service of the cities " to which it applies, and thereby obtain for the city faithful and efficient employees and protect them from removal for religious or political reasons. Legislation of a similar character has been enacted by the federal congress and by the legislatures of nearly every state of the union. It unquestionably has the approval of the best thought of the present day, and we have recently so declared in Commonwealth v. Black, 201 Pa. 433. In that case we said (p. 433) : " It is undeniable that much of the best recent thought devoted to municipal government tends to the elimination of politics and personal influences from consideration and the establishment as far as practicable of a tenure of good behavior for all subordinate and non-political positions."

Recurring now to the question to be decided in this case, it is to be observed that the act of 1906 provides that an officer or employee of the city shall not be discharged " except for just cause, which shall not be religious or political." Here is an explicit denial by the legislature of the right to remove any employee of the city except for the cause named in the act. So long as the employee is without that exception, he is immune from dismissal by any superior officer. The only ground which authorizes a removal from the service is a " just cause," and before the employee can be deprived of his position that must be made to appear. The whim or caprice of the superior officer are entirely inadequate to justify his action in dismissing an employee from the city's service. The cause sufficient to warrant a removal must be personal to the employee and such as to render him unfit for the position which he occupies : City of Rockford v. Compton, 115 Ill. App. 406. The statute denies specifically the right to remove for any religious or political cause. The cause must be substantial and one which affects the efficiency of the employee and the good of the service. Until such " just cause " has been made to appear, the act of 1906 is a complete barrier to the dismissal of the employee.

The statute not only requires that a just cause shall exist to jus-

tify the removal of an employee, but it provides the way in
which the incompetent or inefficient employee shall be dis-
charged. No officer or employee shall be removed, says the act,
"until he shall have been furnished with a written statement of
the reasons for such action, and been allowed to give the remov-
ing officer such written answer as the person sought to be re-
moved may desire." This language is explicit and not to be
misunderstood. It is an emphatic declaration by the legisla-
ture prohibiting the removal of any employee except as au-
thorized by its provisions. Before the removing officer exer-
cises his authority to dismiss the employee, the former must give
to the latter a written statement of the reasons for his intended
action. In other words, the officer must state specifically in
writing the cause or causes of the unfitness or incompetency
of the employee to perform the duties of his appointment.
He must designate wherein the employee is incompetent to
perform the service or is unfaithful in the performance of his
duties. This is a condition precedent, imposed by the statute,
before the removing officer can dismiss the employee from
the service. It is mandatory and the failure of the officer to
observe this provision of the act will render the employee's
removal as abortive as if no cause had been assigned. The
purpose of the statute in requiring a written statement of the
reasons for dismissing the employee is that he may have an
opportunity to meet and refute the allegations of incompe-
tency, unfitness or unfaithfulness alleged against him, and
thereby prevent his removal. Not only must the remov-
ing officer assign his reasons in writing for his intended action
in dismissing the employee, but, before acting, he must also
give to the employee an opportunity to answer the charges
preferred against him. If he can satisfactorily answer the
reasons assigned for his removal and thereby show that there
is no just cause for his dismissal from the city's service, the
removing officer is prevented by the statute from dismissing
him from the service. If the employee in his answer to the
specifications of incompetency or unfitness fail to meet and re-
fute the charges contained in the written statement furnished
him by the removing officer, there will then exist a "just
cause " for his dismissal, and the statute authorizes the remov-
ing officer to discharge him from the city's service. The stat-

ute, therefore, provides explicitly that an employee can only be removed for just cause, and in equally plain terms regulates the manner in which the dismissal must be accomplished.

The dismissal of Truitt from the city's service was, as we have seen, by the letter of Director Clay, written October 14, 1907. The only reason assigned for the director's action was " for the betterment of the service." It is apparent, we think, that the reason assigned by the director was not such " a written statement of the reasons " for his action as the statute requires. The reason assigned is general, vague and indefinite, and wholly fails to meet the requirements of the statute. It is true, as claimed by defendants, that it is the reason that was assigned by some of the predecessors of the present incumbent in the office of director of public safety, but that is no argument in its favor or justification for its use under the civil service act of 1906. Such a reason defeats the very purpose of the act itself, which unquestionably was to protect a faithful and efficient employee from removal for a political, religious or other insufficient cause. It denies the employee an opportunity to answer his accusers by failing to disclose the accusations against him. How is he to make a " written answer " to the charges of unfitness or inefficiency, as required by the act, if the charges against him are not specifically set forth in the statement furnished by the removing officer? The allegation that the dismissal is for " the betterment of the service " is simply the declaration of the removing official, and in no sense is it a written statement of the reasons for removal within contemplation of the civil service act. In passing upon a similar reason assigned for removing certain officers under the civil service law of the federal government, JACKSON, J., in Butler v. White, 83 Fed. Repr. 578, said: " Now, it seems to me no grounds have been shown for their removal, except ' for the good of the public service.' This is a reason that was employed by the officers of the government, when they desired to remove anyone that was obnoxious to them, long prior to the passage of the civil service act. It is too general, vague and indefinite to authorize the removal of an officer under existing law. By the other terms and provisions of the rule just referred to, he has to be confronted with

the charges that are made against him, and to have full notice and an opportunity to make defense."

The demurrer to the answer admits the truth of the facts well pleaded, but not facts immaterial or irrelevant to the issue. Whether the plaintiff was justly open to the charges made against him is not involved in this litigation, and hence was improperly averred in the defendants' answer. Under the well-established rules of pleading he was not required to deny, and was clearly right in not denying, the truth of the charges contained in the answer. The application for the mandamus and reinstatement was based upon the averment in the petition that the plaintiff was not furnished a statement of the reasons for his dismissal and given an opportunity to answer them, as required by the act of 1906. The answer of the defendants should have admitted or denied the averment in the petition, and the demurrer admitted only such facts in the answer as were material and relevant to that issue.

It is contended by the defendants that a peremptory mandamus should not be awarded to reinstate the plaintiff in his position, because the answer to the alternative writ discloses a sufficient cause for the plaintiff's dismissal from the service, and, further, that his reinstatement would have no practical effect, inasmuch as the director could immediately dismiss him. This position is wholly untenable. The plaintiff is asserting a right conferred upon him by an act of the legislature. He claims, and the pleadings disclose, that he was dismissed from the service of the city in direct violation of the civil service act of 1906. His application to the court for a mandamus requiring his reinstatement is based upon the ground that he was unlawfully dismissed from the service, and, therefore, he should be reinstated. It is not an answer to the alternative writ for the defendants to aver that the plaintiff was guilty of conduct which would warrant his removal. The statute provides that the cause shall be properly assigned and furnished him by the removing officer before his removal, and that he be given an opportunity to answer. It is not sufficient for the removing officer to dismiss an employee from the service without assigning a cause, and, when subsequently brought into court on a demand for his reinstatement, to assign the cause. The statute does not so provide, and hence the

court cannot sustain such an answer by the removing officer to an alternative writ of mandamus. Until the employee has been confronted with the charge and has been afforded an opportunity to give a written answer, the removing officer cannot declare that a just cause of removal exists.

The other reason assigned by the defendants, that it will be a vain thing for the court to reinstate the plaintiff because sufficient reasons for his removal exist and the director will remove him, is also without merit. To sustain that proposition we must hold that Director Clay and his superior officer, the mayor, will discharge the plaintiff regardless of the sufficiency of his answer and explanation of the charges preferred against him. This would be a palpable violation of the statute and of the oath of office of both officers. We will not, therefore, assume for one moment that those officials, when judicially advised of the proper interpretation of the civil service act, will not obey its command. When Director Clay furnishes the plaintiff a written statement of the reasons for the proposed removal, the latter will have an opportunity to reply. It will then be the duty of the director to make an investigation and determine whether the accusations against the officer or employee are well founded or groundless. He cannot, as a matter of course, discharge him. He must act upon the facts as they are made to appear to him, and if the plaintiff meets and refutes the charges against him, the duty of the director is to retain the plaintiff in the service of the city. If the charges are shown to be true, it is then equally the duty of the director to remove the plaintiff and protect the city against an inefficient or unfaithful employee. The argument, therefore, of the defendants' counsel that the reinstatement of the plaintiff will be vain because the director will at once discharge him reflects upon the director as an officer, and if we were to so hold we would be assuming that the director would not in good faith, and as required by his official oath, make a full and fair investigation of the charges preferred against the plaintiff and base his subsequent action in removing, or refusing to remove him, solely upon the facts as disclosed by the investigation. The statute imposes this duty upon the director, and we cannot assume that it will not in good faith be performed.

We are of opinion that the plaintiff was illegally removed from his position as superintendent of squares in the city of Philadelphia, and that the court below was right in issuing a peremptory writ of mandamus requiring the defendants to reinstate him in the position from which he was removed.

The judgment is affirmed

MR. JUSTICE ELKIN, concurring :

In the consideration of this case, it should not be overlooked, that the purpose of all civil service laws is to promote efficiency in the public service, and the test of the merit of the system must be increased efficiency in the discharge of public duties. Competency and faithfulness are essential to good service, and those who claim the protection of the civil service act, as well as those who enforce its provisions, are equally bound by the spirit and purpose of its enactment. It will not do to hold an official at the head of a department, clothed with the power to appoint and dismiss employees, to the strictest compliance with every requirement of the act, and at the same time permit the employee to exercise the widest latitude in the performance of his duties. Good faith and honest purpose on the part of an officer intrusted with the supervision of any branch of government are always presumed until the contrary is made to appear. In the administration of civil service laws something must be left to the sound discretion of those authorized to enforce the same. Every subordinate should be respectful and faithful to his superior officer and should manifest a willingness to perform his duties as directed. It is the duty of the head of a department to direct the manner in which the work of his department shall be done, and ability and willingness on the part of the subordinate to do the work as directed are essential requirements of efficient service. Nothing could be more demoralizing to the public service than insubordination and disloyal indifference by the subordinate in the discharge of duties directed by the superior officer. In the construction and enforcement of civil service statutes these essential requirements of any efficient system of government should have due consideration. Civil service laws may, and in many instances no doubt do, prevent abuses in the employment and dismissal of public officials, but after all the efficiency of the service de-

pends upon the integrity, faithfulness and capacity of the individuals who perform the service and these are personal qualities which cannot be given anyone by legislation, nor can any act of assembly make a man efficient if nature or personal habits have otherwise decreed. And it does not necessarily follow that educational qualifications are always the best test of efficiency in the discharge of public duties. While scholastic attainments are always desirable, manly attributes and personal qualities frequently count for much more. Hence, it appears to me, that the head of a department, having the power of dismissal, should be permitted in assigning a just cause for removal under the twentieth section of the act of 1906, under which this proceeding was instituted, to take into consideration the moral character, the personal qualifications, the fitness, and all other qualities of the employee which affect the efficient and proper and decent discharge of his duties. It is true, the act in question does provide that no officer, clerk or employee shall be removed, discharged or reduced until he shall have been furnished with a written statement of the reasons for such action and shall have been allowed to give the removing officer such written answer as he may desire to make. I agree that the reason assigned in the present case was too general and indefinite to meet the requirements of the statute and therefore concur in the conclusion reached by the court below and here. While there is much force in the suggestion that the error in this case is only technical and that the situation is not of the character to demand intervention by the strong arm of the law in the nature of a writ of mandamus, on the whole, however, it seems to me, the integrity of the statute and the rights of the parties, will be better preserved and protected by insisting upon a strict compliance with the initial step taken in a case of removal, to wit: a written statement containing the reasons assigned for such action. The record discloses that the only error committed by the removing officer in the case at bar was failure to specify in his written statement the real cause or causes which actuated him in making the removal. When this is done, as we have no doubt it will be if the facts subsequently set up are true, a just cause of removal will be shown to exist, and it would not only be the right of the director to remove, but it would be his duty

to do so. There is nothing in the record to show that the director did not act in the utmost good faith or that the real facts in the case did not justify a removal. Following a precedent in his department he assigned as a reason for dismissal " the betterment of the service," which we all agree is not sufficient under the requirements of the act of 1906, and for this reason the judgment is affirmed.

Mr. Chief Justice Mitchell, dissenting :

I agree entirely in the view of the learned judge below and this court that the removal of the relator failing to comply with the statute was not valid. But I do not see that under the admitted facts the court is required to reinstate him in office. The reason assigned for removal as appears in the opinion of the court was insufficient, but the actual causes as they are set forth in the answer of the director, are ample.

When these causes were stated in the director's answer they might have been denied, and naturally would have been if they were false. But they were demurred to, and thereby confessed to be true. A demurrer of course admits only facts that are well pleaded, but the rules of pleading cannot be strictly applied to anomalous and exceptional proceedings like those under the statute in question. The natural thing for a man to do when charges are made which are not true is to deny them promptly. But this relator made no such denial for a month and then, the contest having begun, and having put himself in the hands of counsel he was allowed to make a legal confession that the charges were true. It can hardly be assumed that able counsel would have advised this course unless informed by their client that a denial could not be made or if made would not bear investigation.

It thus appears that if reinstated the relator will be immediately liable to removal again for conclusive reasons. To require reinstatement under such circumstances is a vain and useless thing which the law compels no man to do. " While the propriety of the writ as a remedy for the wrongful amotion of a municipal officer is clearly established, the relief will be withheld when it is either admitted by the party or is apparent from the return that if restored to his franchise he is

liable to be again immediately removed for the same cause:" High on Extraordinary Remedies, sec. 410.

As it is apparent in this case that the removal of the relator though irregular in method was right in substance, I would refuse a reinstatement.