## Wright v. City of Philadelphia et al.

*A. W. White*, for plaintiff.

*G. Coe Farrier*, Assistant City Solicitor, and *A. T. Ashton*, City Solicitor, for defendants.

TAULANE, J., June 10, 1929.—This is a motion to quash an alternative writ of mandamus.

The plaintiff is a captain of police of the City of Philadelphia. The Director of Public Safety suspended him for conduct unbecoming an officer, and preferred charges against him before the Civil Service Commission for his discharge. The charges were as follows:

Charge No. 1. Conduct unbecoming an officer.

Specification 1. "In that you were promoted to a captaincy on May 2, 1928, having been, prior to that date for a period of eighteen years, a sergeant with the salary of $170.83 per month; in that you are married and have eight children; in that you have no bank account and apparently never had any; in that on June 29, 1928, you purchased a certificate of deposit in the sum of $7000, paying for it in currency; in that your only explanation was that this sum represented your saving and [you] stated to the Grand Jury of Philadelphia County, August Sessions, 1928, that you had carried this amount in your pocket prior to that time; in that you own the house in which you live, which you bought in 1920 for $2500, paying $500 down in cash; in that you have since reduced the mortgage of $2000 to $450, making the various payments, constituting a total of $1552, at various times in currency; and in that you were unable to offer, and did not offer, any reasonable explanation to the Grand Jury of Philadelphia County, August Sessions, 1928, as to how you could have come into the possession of these moneys and properties honestly."

Specification 2. "In that the Grand Jury of Philadelphia County, August Sessions, 1928, after hearing and analyzing the evidence concerning the accumulation of your aforesaid property, stated that they believed the money received and handled by you was either all, or substantially all, dishonestly acquired, and concluded, and so stated in their special presentment of Oct. 29, 1928, that you were not fit to hold any position in the Municipal Government."

The Civil Service Commission, after hearing, found that the plaintiff was not guilty of the charges and ordered his reinstatement, with pay from the date of his suspension. When he reported for duty he was served with a

written statement from the Director of Public Safety of certain charges against him, which, he was advised, would justify his demotion on May 14, 1929, to the position of a patrolman at a reduced salary, with notice of his right to furnish within five days such written reply to said charges that he might desire to make. The charges were as follows:

"Because, while an officer of high rank in the Bureau of Police, you depos-, ited the sum of $7000 in currency at one time, and explained this deposit under oath before the Civil Service Commission in November, 1928, by stating that it represented accumulated savings from your salary which you had carried in your pocket in the form of bank notes for many years.

"During the period of time wherein you swore you saved this money, you raised a large family, bought your own home, substantially reduced by cash payments a mortgage against your property and incurred and discharged the other usual obligations incidental to life in this community—all this on a salary which averaged during the past five years about $180 per month.

"I cannot understand how any man or group of men could believe your sworn statement that, because of what you described as a lack of faith in banks, you carried in your pocket each day for many years such a large sum of money. I do not believe it.

"I believe that this money was in a large part, if not entirely, acquired by you dishonestly.

"From the testimony, which came from your own lips under oath, not only my confidence in you, but that of the public as well, is seriously impaired, if not destroyed.

"A captain of police must have the full confidence of the Director and the public. Otherwise there cannot be that complete co-operation which is so vitally necessary to maintain law and order by a clean and honest police force."

The copy of the charges and notice of his contemplated demotion on May 14, 1929, were served on the plaintiff on May 9, 1929, but instead of answering the charges or waiting until he was demoted, he sued out on May 11, 1929, a writ of alternative mandamus against the Director of Public Safety "to show cause why the charges preferred against . . . [plaintiff], as of May 8, 1929, which charges have caused the demotion of . . . [plaintiff] to the position of patrolman as of May 14, 1929, should not be withdrawn and . . . [plaintiff's] rank as captain fully recognized," and against the Director of Public Safety, City Controller and City Treasurer to show cause why plaintiff should not receive full compensation as captain from the date of his suspension.

When the writ was issued the plaintiff still held the rank of captain, and his time to answer had not expired. The Director of Public Safety cannot be restrained by mandamus or otherwise from preferring charges against the plaintiff for the purpose of demoting him or ordered to withdraw charges already preferred. There is no suggestion that the proceeding was not regular or that the plaintiff was deprived of his right of answer. If the plaintiff failed to file an answer or by answer denied the charges or alleged that the Director was concluded by the findings of the Civil Service Commission, and the Director of Public Safety then demoted him, he would have a standing by mandamus to ask for his reinstatement if his demotion was illegal. Until he has been demoted, he is in no way harmed. This proceeding is premature and plaintiff's prayer for relief shows it. He does not ask that he be restored to his rank of captain, but that the charges against him be withdrawn. For these reasons the writ might well be dismissed, but we prefer to dispose of the case on the merits.

It is now well settled that the Director of Public Safety has ample authority to demote a member of the police force, for reasons which are just and not political or religious, if the officer is furnished with a copy of the charges and given an opportunity to answer them. He is not entitled to a trial; the truth or falsity of the charges is for the Director alone. (McCoach v. Philadelphia, 273 Pa. 317.)

Some reason must be assigned; it is not sufficient to charge simply "for the good of the service." (Truitt v. Philadelphia, 221 Pa. 331.) We think the reasons assigned by the Director are sufficient to justify plaintiff's demotion. They are personal to the plaintiff, and are not religious or political. The responsibility for the conduct of the police department is on the Director of Public Safety and not on the courts. It is for the Director alone, without trial, to determine the truth or falsity of the charges without appeal to the courts. (Shellenberger v. Warburton, 279 Pa. 577, 581.) Unless the charges are meaningless (Truitt v. Philadelphia, 221 Pa. 331) or manifestly frivolous, the courts cannot interfere with the action of the Director.

The plaintiff, in his brief, concedes that the Director of Public Safety, unless concluded by the findings of the Civil Service Commission, would be justified in demoting him. The real point in controversy is whether the Director of Public Safety is concluded by the findings of the Civil Service Commission.

A member of the police force cannot be removed or discharged except by trial and conviction by the Civil Service Commission. (Act of June 25, 1919, § 18, P. L. 581, 620.) It is true the Civil Service Commission refused to discharge the plaintiff because, in their opinion, the Director of Public Safety had failed to substantiate his charges against the plaintiff.

While there is no doubt of the conclusive effect of the findings of the Civil Service Commission so far as they relate to plaintiff's discharge, we are quite clear that they in no way bind or preclude the Director from demoting the plaintiff. The duty and responsibility of a demotion are vested in the Director of Public Safety, and not in the Civil Service Commission. (Leary v. Moore, 4 D. & C. 25.) The Civil Service Law nowhere suggests that any act of the Commission can interfere with the discretion of the Director in demoting a member of the police force. The Director must act on his own sense of duty, and he may draw his own inferences from a given state of facts. What constitutes sufficient ground for demotion must necessarily be largely a matter in the discretion of the Director. (Thomas v. Connell, 264 Pa. 242, 246.)

The Director states that he believes the plaintiff had acquired, while in the police department, a large sum of money dishonestly; that he discredits plaintiff's testimony before the Civil Service Commission, and for these reasons he has lost all confidence in the plaintiff. We can think of no better reason for the demotion of a member of the police force than want of confidence in the Director of Public Safety, particularly when the officer holds the high rank of captain, and is guilty, in the belief of the Director, of dishonesty. No one suggests that the Director's belief is capricious or insincere. The guilt or innocence of the plaintiff is not before us.

No doubt, it sometimes happens that the Director is morally certain of the guilt of a member of the police force which he is unable to establish by legal evidence, and it may be, in some instances, that he has legal evidence, but for reasons of policy or the absence or perversity of witnesses, he cannot avail himself of it.

We cannot interfere with the action of the Director in demoting the plaintiff. The Mayor, City Controller and City Treasurer should not have been

made parties. No relief can be had against them. There is some question whether the appropriation of 1928 for the salaries of the police department lapsed at the end of 1928. The City Solicitor at bar stated that the Director of Public Safety would endeavor in every way to have plaintiff's salary paid him from the time of his suspension. The Director can do no more than sign warrants for plaintiff's salary, but he cannot sign one for plaintiff's salary earned in 1928 if the appropriation for that year lapsed. These questions could be more properly raised by answer.

We will quash the mandamus as to salary without prejudice, but with the right to the plaintiff to apply for further relief if he does not receive his salary as ordered by the Civil Service Commission.

And now, to wit, June 10, 1929, the writ of alternative mandamus is quashed, except that said writ, so far as it applies to the plaintiff's salary, is quashed without prejudice, with the right to the plaintiff to ask for further relief should his salary as captain be not paid to him from the time of his suspension.