STATE EX REL. TRACY and others, Respondents, vs. HENRY, State Treasurer and Director of State Inspection Bureau, Appellant.

*June 7—June 24, 1935.*

54

For the appellant there was a brief by the *Attorney General, Herbert H. Naujoks,* assistant attorney general, and *H. H. Thomas* of Madison, special counsel, and oral argument by *Mr. Thomas.*

*Joseph A. Padway* of Milwaukee, for the respondents.

FRITZ, J. The facts material on this appeal are substantially the same as those stated in connection with the decisions reported in *State ex rel. Tracy v. Henry,* 217 Wis. 46, 258 N. W. 180, and *State ex rel. Nelson v. Henry,* 216 Wis. 80, 256 N. W. 714, excepting that, in so far as is material on this appeal, the following additional facts were admitted or alleged in the defendant's return: Upon the consolidation, by virtue of ch. 461, Laws of 1933, of the state oil inspection department with certain other state departments as the state inspection bureau, the petitioners were permitted to continue in the civil service as deputy oil inspectors. As such inspectors they were certified on the pay roll of the state and lawfully paid for their services until the defendant, as state treasurer, at times alleged in the petition, all of which were prior to the commencement of this action, attempted to discharge the petitioners as such deputy oil inspectors, without citing any reason therefor, excepting that in some instances the notice stated that the discharge was because of the reorganization of the department. Subsequent to the decisions in *State ex rel. Nelson v. Henry, supra,* and *State ex rel. Tracy v. Henry, supra,* holding that those discharges of the petitioners were illegal, the defendant caused an investigation to be made as to the honesty, competency, efficiency, and ability of each of the petitioners to perform the duties of deputy oil inspector. Up to the time that defendant was compelled to make his return, he had completed his investiga-

tions as to fourteen of the petitioners (Alex Wilson, F. B. St. Louis, J. D. Stuart, E. B. Schickedantz, James Jondro, James G. Vennie, Oliver J. Zimmerman, John W. Haegele, Charles B. Collins, Christ Zelle, Louis Blegen, Morgan H. Vander Hyden, Ole J. Grinna, and Albert Gillis), who, for convenience of reference, will be referred to hereinafter as Group A. In respect to thirteen of those fourteen petitioners (excepting therefrom Morgan H. Vander Hyden), the return alleged that defendant's subsequent investigations disclosed that there had existed, at the time of the original illegal discharges, a just and legal cause for discharge of each of those thirteen in Group A because of grounds which the defendant specified in letters, which he sent to those petitioners on dates which were from thirteen to sixteen months subsequent to the date of the original discharge, and which he alleged to be so long prior to the date of his return that more than the reasonable time allowed by sec. 16.24, Stats., for a subordinate to make an explanation, had elapsed; and that because of the failures of each of those petitioners to make such explanation, those subsequent discharges had become effective as to them. In addition, defendant alleged, in respect to James G. Vennie, who was one of those in Group A, that he had been notified also that he had been suspended without pay because the district to which he had been assigned had been eliminated by division thereof and the annexation of the divisions to adjoining districts. In respect to Morgan H. Vander Hyden, the return alleged that he had been offered a position "to replace" an inspector who had entered the service after Vander Hyden had, but that the latter had requested that the offer be held open pending possible legislative action and a reorganization of the inspection bureau; and that he had not notified defendant of any definite decision.

In respect to four of the remaining thirteen petitioners (Marie B. Tracy, Robert L. Southey, Burr R. Tarrant, Sr.,

E. S. Nelson, C. H. Roepcke, Conrad J. Melberg, D. C. McLaughlin, Ray W. Hansen, O. C. Flugstad, Elmer B. Lindh, Wm. H. Ward, Carl Schmidt, and J. C. Christoph), all of whom will be referred to hereinafter as Group B, the defendant alleged that he had also completed his investigation, and had found that there had likewise existed as to each of them, at the time of his original illegal discharge, just and legal cause for discharge, which was stated in letters sent to them on March 12, 1935; but that, prior to the time permitted for making defendant's return, there had not elapsed the reasonable time allowed by statute (sec. 16.24) for the making of an explanation by a subordinate and before the discharge could become effective as a matter of law. In respect to the remaining nine petitioners in Group B, the defendant's return does not allege the existence of any cause for discharge, but stated that he had not completed his investigation in relation to them. As to all of those in Group B, the defendant in his prayer in the return requested that the court should withhold judgment.

In the order granting petitioners' motion for judgment on the pleadings, the court, in respect to all petitioners in Group B, stated that it was satisfied that "they are entitled to reinstatement to their former positions in the service of the state and to all rights as such employees as of the date of the trial," and ordered that their "motion for judgment for a peremptory writ of *mandamus* as prayed for in the petition reinstating" them "to their former positions in the service of the state" be granted; and, in that connection, the court further ordered, in respect to all of the twenty-seven petitioners, that they have a peremptory writ of *mandamus* to be issued forthwith, "directed to and commanding the said defendant, Robert K. Henry, treasurer of the state of Wisconsin, and director of the state inspection bureau, to reinstate petitioners to their former positions in the service of the state as prayed for in the petition." As there is no allegation whatsoever

showing that any legal cause ever existed in fact for the discharge of nine of those in Group B, and as it appears that, as to the remaining four in that group, sufficient time allowed by sec. 16.24, Stats., for the making of an explanation in answer to the defendant's charges, and for a discharge to become effective under the statute, had not elapsed, all of those in Group B were clearly entitled to have judgment on the pleadings, as was ordered by the court.

In respect to the petitioners in Group A, the court, in its order granting judgment on the pleadings, stated that, as to those petitioners, it was satisfied "that the said so-called subsequent discharges of the petitioners by the defendant do not affect the rights of any of the petitioners as to the relief they are entitled to," and they "are entitled to reinstatement as of the date of their original discharge, and . . . to all rights of employees of the state to the time and date of the alleged subsequent discharges." In that connection, the court said that it was of the opinion that "whatever rights any and all of the respective parties may have by virtue of any alleged subsequent discharges may be the subject of new and independent proceedings." Upon those conclusions, the court then ordered that those petitioners were entitled to judgment for a peremptory writ of *mandamus* reinstating them "to their former positions in the service of the state as of the date of the alleged original discharges;" and ordered, as stated above, the issuance of such a writ commanding the defendant to reinstate all of the twenty-seven petitioners, "to their former positions in the service of the state as prayed for in the petition." That reference to the prayer in the petition, which did not in fact specify any time of reinstatement, or the limits of any period for which reinstatement was prayed, was not necessarily in conflict with, nor did it constitute a modification of the previous recital in the order that the rights to which the petitioners in Group A were entitled were "all rights of employees of the state to the time and date of the alleged sub-

sequent discharges." On the other hand, although the provision in the judgment, as entered by the clerk, that the peremptory writ shall order the reinstatement of the petitioners, does not by any express words limit the reinstatement of those in Group A to the time of a subsequent discharge, it is expressly provided in the judgment, in ordering the issuance of the peremptory writ, that the reinstatement is to be "as directed in said order for judgment." In view of the reference last quoted, there must be deemed embodied in the judgment, in so far as it relates to those in Group A, the statement in the order for judgment that the reinstatement to which they are entitled is only "to the time and date of the alleged subsequent discharges;" and consequently they are entitled, under that judgment, to the rights of employees only to the time of those discharges. In view of the court's express limitation as to the period of reinstatement and its statement (quoted above) in respect to those petitioners, that whatever rights "the respective parties may have by virtue of any alleged subsequent discharges may be the subject of new and independent proceedings," it is obvious that the court did not intend to, and has not determined the validity or effect of the alleged subsequent discharges, or the status or rights, if any, of those petitioners, subsequent to the time of those discharges. As they have not filed any notice under sec. 274.12, Stats., for a review of the court's ruling in any respect, they are not entitled on this appeal to any modification of the judgment, which stands as an adjudication of their rights up to the time of the alleged subsequent discharges.

It follows that, in passing upon defendant's assignments of error, in so far as they relate to the petitioners in Group A, we are concerned with a judgment which reinstates those petitioners only up to the time and date of those subsequent discharges. Consequently, the only questions which need be determined on this appeal, in respect to those in Group A, are (1) whether the existence of facts alleged in the return (as-

suming them to be true because deemed admitted on a motion for judgment on the pleadings), which may constitute legal causes for a discharge if subsequently validly made thereon, will defeat the right of the petitioners to be reinstated, up to the date of such a discharge; and (2) whether those facts and a subsequent valid discharge based thereon will excuse or render impossible compliance with a peremptory writ commanding the defendant to reinstate the petitioners, and to report and certify their reinstatement, in compliance with sec. 16.25, Stats., so that their names will be properly placed on a state pay roll as of the date of the original illegal discharge.

It is provided in sec. 16.24 (1), Stats., that—

"No permanent subordinate or employee in the competitive division who shall have been appointed under the provisions of sections 16.01 to 16.30 or the rules made pursuant thereto shall be removed, suspended without pay, discharged or reduced in pay or position except for just cause, which shall not be religious or political. In all such cases the appointing officer shall, at the time of such action, furnish to the subordinate his reasons for the same and allow him a reasonable time in which to make an explanation. The reasons for such action and the answer thereto shall be filed in writing with the director prior to the effective date thereof."

Under that provision, all of the petitioners were entitled to continue in their positions as deputy oil inspectors in the state civil service, unaffected by any attempted discharge by the defendant, as their appointing officer, until he had taken the action to effect their discharge, and there had elapsed the time which is prescribed in sec. 16.24 (1), Stats., before a discharge can become legally effective. Thus, no discharge could become effective until there was compliance with the statute in all of the following respects:

(1) By the appointing officer furnishing to the subordinate his reasons for a discharge, at the time of such action;

(2) By the appointing officer allowing the subordinate a reasonable time in which to make an explanation; and

(3) By filing in writing with the director of the bureau of personnel, prior to the effective date of the discharge, the appointing officer's reasons therefor, and the subordinate's explanation in answer thereto.

Obviously, as the statute expressly requires that "the reasons for such action and the answer thereto shall be filed in writing with the director prior to the effective date thereof," a discharge of any of the petitioners could not legally become effective until after (1) such reasons were furnished to him, and (2) thereafter there has elapsed a reasonable time for him to make his explanation, and (3) thereafter such reasons for discharge and the subordinate's answer thereto had been filed with the director of the bureau of personnel. Likewise, in view of those requirements, an attempted compliance by furnishing such reasons subsequent to the original illegal discharge could not become effective as a discharge until after such reasonable time for making an explanation had elapsed, and such reasons and explanation had been filed; and, in view of those consequences, it is manifest that a subsequently effective discharge, pursuant to subsequently furnished and filed legal reasons, could not possibly operate retroactively so as to be deemed effective as of the date of the original illegal discharge.

As there clearly was no compliance by the defendant in any of the respects prescribed in sec. 16.24 (1), Stats., in relation to the petitioners in Group A, up to the time of the alleged discharges, made some thirteen to sixteen months subsequent to the original attempt, the rights of those petitioners to their positions in the state service continued unterminated, as a matter of law, to at least the time of the subsequent discharges. Consequently, by reason of their continuing as state employees until that time, at least, they were certainly entitled to judgment for the issuance of the peremptory writ of *mandamus,* to compel the performance by the defendant of all official acts on his part which are necessary to reinstatement,

as of the date of their original illegal discharge, as employees in the state civil service, and to enable them to enjoy the rights and emoluments of their positions, including the salary, up to the time of a valid discharge. *Truitt v. City of Philadelphia*, 221 Pa. 331, 70 Atl. 757; *Ridgway v. Fort Worth* (Tex. Civ. App.), 243 S. W. 740; *State ex rel. Hamilton v. Kansas City*, 303 Mo. 50, 259 S. W. 1045; *State ex rel. Lindsay v. Kansas City* (Mo. App.), 20 S. W. (2d) 1; *Peckham v. Mayor of Fall River*, 253 Mass. 590, 149 N. E. 622; *Nelson v. Baker*, 112 Or. 79, 227 Pac. 301, 228 Pac. 916; *State ex rel. Lease v. Wilkinson*, 55 Mont. 340, 177 Pac. 401. It is true that in *State ex rel. Julian v. Board of Metropolitan Police Commissioners of Logansport*, 170 Ind. 133, 83 N. E. 83, and *State ex rel. Kendall v. Wilson*, 151 Mo. App. 719, 132 S. W. 623, the right to a peremptory writ of *mandamus* was held to be defeated by an effective discharge from public service during the pendency of the *mandamus* proceedings. However, the ultimate discharge involved in each of those two cases was made in a proceeding to discharge which had been commenced prior to the commencement by the employee of a *mandamus* proceeding, which continued pending and uncompleted after the commencement of the *mandamus* proceeding, and in which a valid discharge was finally made in the exercise of jurisdiction to discharge, that had been duly invoked before the commencement of the *mandamus* proceedings, and that continued, without any stay being ordered in the pending litigation, up to the completion thereof by the discharge. The facts in the case at bar differ materially in that there was no such jurisdictional connection between the defendant's initial abortive attempts to discharge the petitioners and the discharges which he subsequently attempted to make. The latter were not made in the due course of a pending and uncompleted proceeding, in which the defendant was merely continuing to act in the exercise of juris-

diction assumed by him prior to the issuance of the alternative writ herein on petitioners' application.

Even though the causes which were ultimately assigned by the defendant for the discharges which he subsequently attempted to make, in respect to those in Group A, should be held to constitute just and valid causes for discharge under sec. 16.24 (1), Stats., and to justify discharges effective upon compliance with the conditions precedent and the expiration of the time prescribed under that section, those consequences do not legally excuse or render impossible compliance with the commands of the peremptory writ of *mandamus,* in so far as the petitioners' right to have the defendant compelled to report the reinstatement of the petitioners in accordance with sec. 16.25, Stats., and to place and certify their names on the proper pay roll, as a prerequisite for the payment of their salaries for the periods stated in the order for judgment is concerned. *People ex rel. Collins v. McAneny,* 144 N. Y. Supp. 121; *Levitch v. Board of Education of City of New York,* 212 App. Div. 598, 209 N. Y. Supp. 271; *Levitch v. Board of Education of City of New York,* 216 App. Div. 391, 215 N. Y. Supp. 309; *State ex rel. Ape v. Kansas City,* 221 Mo. App. 784, 288 S. W. 85; *Dinkel v. Hudson County,* 5 N. J. Misc. 326, 136 Atl. 420; *State ex rel. Roe v. City of Seattle,* 88 Wash. 589, 153 Pac. 336; *City of Chicago v. People,* 210 Ill. 84, 71 N. E. 816; *Truitt v. City of Philadelphia, supra; State ex rel. Hamilton v. Kansas City, supra.* In several of those cases the writ was even ordered although, by reason of the death of the petitioner during the pendency of the litigation, the only purpose which was served by the writ was to compel official action necessary as basis for the payment of salary from the time of an unauthorized discharge up to the time of the petitioner's death. Compliance with the court's order for judgment by reinstating the petitioners in Group A, so as to entitle them to "all rights of em-

ployees of the state to the time and date of the alleged subsequent discharges," will not necessarily be in conflict with the power of the defendant, as their appointing officer, to effectively discharge them, upon the termination of the period during which they were entitled to those rights, as was· held by the court. On the other hand, as it appears on the record herein that there was no attempted discharge, which had become effective, up to the time the court ordered judgment, in relation to the petitioners in Group B, there is no basis for defendant's contention that their reinstatement should not have been ordered, because it would be the defendant's duty to discharge them for statutory cause immediately following such reinstatement.

The fact that, in the letter furnishing the petitioner Vennie with alleged causes for his discharge, there was also assigned, as a reason for suspending him without pay, the fact that his district had been eliminated, is immaterial in view of the fact that the court included him in Group A, the members of which were held entitled only to the rights of employees up to the time and date of a subsequent discharge. Consequently, even if the additional fact thus assigned as ground for Vennie's suspension constituted a ground because of which a discharge based thereon could become effective, the assignment thereof could not affect his right to reinstatement for the period which had elapsed, to the time he was notified of suspension on that ground. Likewise, the record does not sustain defendant's contention in respect to the petitioner Vander Hyden, that, in ordering his reinstatement, the court erred because, when the defendant had offered to reinstate him, he was undecided as to whether he wanted to accept the offer. The record discloses that the allegation on that subject, in defendant's return, is merely to the effect that he offered Vander Hyden a position "to replace" another deputy oil inspector. Manifestly, the offer of a position to merely replace

another employee, without offering to fully reinstate Vander Hyden to his position as of the date of his wrongful discharge, was so far short of the restoration of his full rights, including the payment of his salary since that date, to which he was entitled, that his nonacceptance of that offer would not defeat his right to reinstatement as ordered by the court. Vander Hyden should therefore be restored with those under Group B to full restoration of rights from the date of his discharge.

*By the Court.*—The order for judgment, the judgment thereon, and the peremptory writ of *mandamus* are affirmed.