## Gartland v. City of Philadelphia et al.

*F. Raymond Heuges*, for plaintiff.

*Frank F. Truscott,* city solicitor, and *James Francis Ryan,* assistant city solicitor, for defendants.

CRUMLISH, J., August 23, 1949.—This matter is before us on petition for writ of alternative mandamus, return, and replication.

Petitioner has been a patrolman, Bureau of Police, City of Philadelphia, since April 10, 1929. On October 5, 1933, he was charged with neglect of duty and was given "four hours extra duty"; on October 10, 1940, he was charged with neglect of duty for the second time and lost "four days suspension"; on January 27, 1941, he was charged with neglect of duty and was given "four hours extra duty".

On March 14, 1949, in answer to an inquiry from the civil service commission, petitioner's immediate superior said that, in his opinion, petitioner's "character and worth as a member of the bureau" were "good".

On March 5, 1949, petitioner was suspended by his commanding officer pending further investigation of charges against him. On March 10, 1949, he was charged with conduct unbecoming an officer as follows:

"Specification 1.

"In that you have consorted with one, Emil Brandley, who is wanted for six holdups and robberies and a burglary.

"Specification 2.

"In that it is alleged on or about February 7, 1949, you were engaged in conversation with the said Emil Brandley, in a restaurant at 11th and Spring Garden Streets, where you stated to him that you had a safe job but that it was not ready yet.

"Specification 3.

"In that it is alleged on February 23, 1949, you tipped the said Emil Brandley by telling him 'if you are working with Gentner, you better move because Gentner will be picked up some time tonight' and sub-

sequently some time later on the same date, Ernest Gentner was arrested charged with six holdups and robberies and a burglary of an auto truck."

After hearings before the civil service commission held on March 30, 1949, and April 25, 1949, at which time witnesses were heard and petitioner was present with counsel, the civil service commission on April 29, 1949, found petitioner "to be Guilty of Specification 1 and Not Guilty of Specifications 2 and 3 of Charge No. 1, Conduct Unbecoming an Officer". At the same time it directed that he be dismissed from the service. It appears from the record that Commissioner Jones dissented.

Petitioner contends that the majority's findings amount to an abuse of discretion. Respondents contend to the contrary that "the decision of the majority of the commission was properly reached, based upon the evidence produced and petitioner was legally and properly discharged from his position as patrolman."

One of the best statements of the scope of inquiry by this court at this stage of the proceedings is found in Gretton v. Pittsburgh et al., 344 Pa. 219, 220 (1942) :

"Mandamus lies to enforce the performance of a ministerial duty; it will not issue to compel a person or administrative body, vested with deliberative or discretionary powers, to reverse or modify a decision supported by testimony: (citing cases). The findings of fact of a civil service commission are binding if the court of common pleas, after an independent examination of the record, finds that there is substantial evidence to sustain them; it is not for the court to weigh the evidence but only to make sure that there has been no abuse of discretion on the part of the commission: (citing cases) ."

Again, in Raffel v. Pittsburgh et al., 340 Pa. 243, 246 (1940), quoted with approval in Wagner v. Pittsburgh et al., 352 Pa. 647, 649 (1945) :

"If there is admissible evidence, the weight of which the court is without authority to consider, to move the deliberative powers of the Commission, without manifestly abusing its discretion, in sustaining or reversing the action of the Director, then the petition should be refused; if not, it should be granted."

Thus the only question before this court is whether the commission has abused the discretion which has been granted to it. A definition of discretion by an administrative body was given by the late Judge Audenried in The Lubin Manufacturing Company's Appeal, 25 Dist. R. 578, 579 (1916), and it has been adopted in 18 C. J. 1134-1135, and by the late Judge Patterson speaking for the Court of Common Pleas No. 1 in L. J. Selznick Productions, Inc., v. Pennsylvania State Board of Censors, 26 Dist. R. 423 (1917) and by the late Judge Thompson speaking for the Orphans' Court of Philadelphia County in James' Estate, 9 D. & C. 639 (1927) :

"By discretion is meant the power to discriminate and determine what, under existing circumstances, is right and proper. The lawful exercise of discretion involves a fair consideration of all peculiar features of the particular question to the disposition of which it is to be applied. It excludes not only the play of fancy or caprice, but also servile adherence to a hard and fast general rule."

To determine whether or not there was an abuse of discretion in the present case is not easy because the specification of which petitioner was found guilty is that he "consorted". The specification is far from exact or lucid. The applicable meanings given by the Oxford English Dictionary: "to accompany; keep company with; . . . to associate in common lot; . . . *Intr.* to associate, to join or keep company." Webster's New International Dictionary gives the following meanings: "to keep company, to associate; . . . to be

or come into accord; . . . to associate in circumstances." The usual connotation of the verb arises from its derivation from *sors*: lot, fate, destiny. Thus, the word implies an association in common circumstances or destiny.

Applying Judge Audenried's definition of discretion to the testimony on which the finding of "consorting" was based, the evidence shows that petitioner casually knew Brandley. On one occasion petitioner walked into a restaurant, saw Brandley and sat down for a cup of coffee with him; on another occasion he accepted the offer of Brandley, who was accompanied by his wife, to ride from Spring Garden Street to Fairmount Avenue. There is no evidence that the officer knew that Brandley was wanted for the holdups and robberies. In the light of this last fact, it is significant that petitioner's superior, an inspector with 28 years of experience in the Police Department, testified that he had never heard of Brandley before.

If evidence such as the foregoing were held to be sufficient to dismiss an officer from the police force, the policy on which the civil service laws are based would be completely frustrated. See Truitt v. Philadelphia, 221 Pa. 331, 338 (1908). It is conceivable that every officer in the city might at one time talk to or take a ride with someone whom he later discovers is wanted for some crime. With such as the practical situation, the only requirements for a dismissal would be a specification drawn similar to the one in this case and a finding of guilty. Specifications such as this would then provide the cover for dismissals based upon political, religious, or arbitrary reasons.

Petitioner also raises the objection that the charge was not determined within 30 days after it was filed as the Act of July 29, 1941, P. L. 579, sec. 1, 53 PS §3338, requires. The decision was announced just four days after the date of the last hearing, and petitioner,

166

through his counsel, participated in such hearing. There is no suggestion that if the statute is not complied with, the charges should be dismissed. Under such circumstances, we do not think such objection alone would require the issuance of this writ.

The evidence is insufficient to support the findings of the majority of the civil service commission. The action of the majority amounts to an abuse of discretion. The writ prayed for shall issue, returnable sec. leg. Counsel for petitioner will prepare proper order.