Jimmy Ray BROGDON, Appellant/Cross–Appellee,

v.

CITY OF KLAWOCK, Appellee/Cross–Appellant.

Nos. S–7094, S–7164.

Supreme Court of Alaska.

Jan. 17, 1997.

Jeffrey A. Friedman, Richard H. Friedman, Friedman, Rubin & White, Anchorage, for Appellant/Cross–Appellee.

Paul S. Wilcox, Kimberlee A. Colbo, Hughes, Thorsness, Gantz Powell & Brundin, LLC, Anchorage, for Appellee/Cross–Appellant.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

MATTHEWS, Justice.

Appellant, Jimmy Ray Brogdon, was dismissed from his position as Officer–in–Charge with the Klawock Public Safety Department.[1] He challenged his dismissal by filing a grievance. After a formal hearing the grievance committee[2] reached a decision which it announced on the record as follows:

> We are back on record to determine— the committee has come back with a recommendation.

1. As a regular employee of the City he could only be "dismissed for incompetence, inefficiency, insubordination, habitual tardiness, use of intoxicating liquor, narcotics or dangerous drugs on duty, or for similar just cause."

2. Under the Klawock Code the grievance committee is an ad hoc body consisting of two City council members, two City employees selected by the aggrieved employee, and one "public citizen mutually acceptable to the other four members." Chap. 6.8, § 3B2, Klawock Code of Ordinances.

The committee agrees that in the pretermination hearing, Items 1, 2 and 3 were in violation. And we cannot determine guilt or innocence in a criminal matter. If this was illegal, as so stated in the termination hearing, it should, and the committee recommends an investigation be done by Alaska State Troopers. And the termination should be based on the findings of this investigation.

If found not guilty, reinstated. If found guilty, then termination stands and criminal charges pursued.

Items one, two, and three in the pre-termination notice were:

1. Mismanagement of municipal funds and assets.

2. Handling city finances in an unsafe, illegal manner.

3. Violating both State Statute and City Ordinances concerning finances.

Neither party appealed the decision of the grievance committee.

The City delayed requesting a trooper investigation for three months. A month after requesting the investigation, the City asked the grievance committee to reconsider its decision. Brogdon opposed reconsideration, and filed suit against the City claiming, among other things, that the City had failed to comply with the decision of the committee by unreasonably delaying its request for a trooper investigation.

Discovery and motion practice commenced. Meanwhile, the trooper investigation was conducted. The investigating trooper issued his report, which exonerated Brogdon.[3]

## I. *Brogdon's Appeal*

■ After receiving a copy of the trooper's report, Brogdon requested reinstatement. The City did not honor this request. Brogdon then moved for summary judgment. The court denied the motion, for two reasons. First, there remained a material issue of fact "concerning the possibility of criminal charges being brought against Brogdon based on the findings in the trooper's investigation" because the trooper had referred the case to the district attorney for disposition and the district attorney had not yet acted. Second, there existed material issues of fact concerning the City's right to seek reconsideration before the grievance committee.

Brogdon moved for reconsideration of this decision, arguing that the question whether the City had a right to seek reconsideration of the committee decision was a question of law for the court. While the motion for reconsideration was pending, the district attorney wrote Brogdon's counsel concerning the trooper investigation and report. The letter stated:

The report was evaluated to determine whether charges of Official Misconduct, Simulation of Legal Process, Theft in the Third Degree, or any other charges should be filed.

As of July 30, 1993, a determination was made that no charges of any kind would be filed. Presently the case is closed and no additional investigation has been requested. The determination to forgo prosecution at this time, of course, does not preclude future criminal prosecution with regard to this matter, nor does it consti-

---

**3.** The trooper commented as follows in the report:

I can find no evidence that defendant ever benefited directly from the establishment of the petty cash/checking account, except for one pizza which was bought. He is guilty of keeping poor records and a poor evidence locker, but that's about it.

Pretty much all of the money that was supposed to go into the account went into the account. There is a small amount not accounted for, but that can be explained by lax bookkeeping and by the burglaries that occurred in the city office.

The synopsis section of the report stated:

On 6/14/93, Sgt. Hall opened an investigation into official misconduct in Klawock. City Manager Marvin Yoder advised that Lt. J. Brogdon, Klawock P.D., has misappropriated funds from impound fees and the sale of forfeited property. Investigation revealed that the City Manager gave permission to establish a petty cash fund, and that Mr. Brogdon received no personal gain from this fund. Case referred to District Attorney for disposition.

tute a promise not to prosecute with regard to this matter.

This letter was filed with the superior court.

In response to Brogdon's motion for reconsideration the court agreed that it was a question of law as to whether the grievance committee should be allowed to reconsider its ruling.[4] The court went on to rule, sua sponte, that "it is appropriate that the grievance committee further consider whether the trooper investigation resulted in a sufficient basis for termination."[5] (Footnotes omitted.) The court thereupon remanded the case to the grievance committee.

Three of the five members of the grievance committee on remand had not served on the original grievance committee which had issued the original decision.[6] The three new members decided that the trooper investigation amounted to a finding of illegality sufficient to warrant termination. The two members who had participated on the committee when it made its original determination dissented. Based on the majority's decision the superior court then granted summary judgment in favor of the City.

The court erred in denying Brogdon's motion for summary judgment. The decision of the first grievance committee was not appealed by either party and was, therefore, dispositive of Brogdon's grievance.[7] The decision was sufficiently clear that it was capable of being enforced. It called for a trooper investigation to determine whether Brogdon was

or was not guilty of criminal wrongdoing. If the former, his termination would stand; if the latter, he would be reinstated.

The finding of the trooper investigation was also sufficiently clear. It found Brogdon not guilty of criminal wrongdoing. Therefore, under the committee decision, Brogdon should have been reinstated.[8]

## II. *The City's Cross–Appeal*

After the court denied Brogdon's motion for summary judgment based on the trooper report, the City issued a supplemental termination notice stating new grounds for terminating Brogdon. The City moved for summary judgment based on the new grounds. The court denied this motion but noted that "such evidence may be admissible to limit damages...." Subsequently the City filed a motion styled "Motion to Limit Damages, if any, Based Upon After–Acquired Evidence." Concerning this motion the court ruled that after-acquired evidence could be admitted in support of the supplemental termination notice only "if it is evidence that [the City] would reasonably have discovered if Brogdon had not been terminated." (Emphasis omitted.) The City has cross-appealed from this ruling.

 The City argues that the requirement that after-acquired evidence in support of its supplemental reasons for termination must be evidence that the City would have

4. The court stated:
 The court ... does believe that it is the court's duty to decide whether the grievance committee should be allowed to reconsider its ruling. The court should make that decision if it has sufficient facts to make a decision as a matter of law. The court doesn't believe that the committee can look at new matters or reconsider old matters.

5. In support of this ruling the court stated:
 The committee's recommendation and call for a trooper investigation doesn't specify whether that investigation was to be a criminal investigation or an internal investigation, whether the illegality and "guilty or not guilty" determination was to be made by themselves or others. There is no statement of whether the finding ·must be made by a preponderance of the evidence or beyond a reasonable doubt. The letters now submitted to the court from the District Attorney are ambiguous and the trooper

report is not before the court. Given these things it is appropriate for that committee to determine whether its criteria have been met.

6. The three new members were the two City council members and the public citizen member.

7. The City argues· that the decision of the grievance committee on remand bars Brogdon's claim on the basis of res judicata. However, because the first grievance committee's decision was dispositive, there was nothing for the second grievance committee to decide.

8. Assuming that the final line of the trooper's synopsis which referred the case to the district attorney for disposition, *see* note 3, *supra*, created ambiguity, that ambiguity was eliminated by the letter from the district attorney stating that a determination was made that no charges would be filed and that the case had been closed.

discovered if Brogdon had not been terminated is legally unsupportable. Brogdon defends this requirement as necessary given the danger that the supplemental reasons for termination may be pretextual.

■ We agree with the City that the limitation imposed by the superior court was erroneous. If an employer discovers grave misconduct on the part of a terminated employee which the employee might have been able to conceal had the employee not been terminated, the employer should nonetheless not be required to reinstate the employee or to pay prospective damages for the employee's termination:

> Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit.

*McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, ——, 115 S.Ct. 879, 886, 130 L.Ed.2d 852 (1995).

Brogdon's concern that new reasons for termination may be pretextual is legitimate. After-the-fact justifications should be viewed with skepticism. It might be appropriate to fashion a rule that no post-termination justification should serve to limit damages unless it is one which all reasonable employers would regard as mandating termination and which is, as a matter of law, just cause for termination. Other safeguards against after-the-fact pretextual justifications such as imposing a heightened burden of proof are also possible. However, these questions are not before us. Likewise, the question whether a new cause for termination merely serves to limit damages or eliminates entirely the right to damages is not presented. We rule at this time only that the limitation imposed by the trial court that evidence in support of new reasons for termination must be such as would have been discovered had termination not taken place was erroneous.

For the above reasons the judgment in this case is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.