BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Petitioner-Respondent,

v.

STATE of Wisconsin PERSONNEL COMMISSION, Respondent-Respondent-Co-Appellant,

Dale R. BRENON, Appellant.

Dale R. BRENON, Petitioner-Appellant,

v.

STATE of Wisconsin PERSONNEL COMMISSION, Respondent-Respondent.

Supreme Court

No. 01–1899. Oral argument May 28, 2002.—Decided June 28, 2002.

2002 WI 79

(Also reported in 646 N.W.2d 759.)

149

For the respondent-respondent-co-appellant there were briefs (in the court of appeals) by *Kristine A. (Edwards) Long* and *Hurley, Burish & Milliken, S.C.,* Madison, and oral argument by *Kristine A. Long.*

For the petitioner-respondent the cause was argued by *David C. Rice,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. WILLIAM A. BABLITCH, J. Appellant Dale Brenon (Brenon) successfully challenged his discharge by his employer, the Board of Regents of the University of Wisconsin System, more specifically the University of Wisconsin-Milwaukee Police Department (UWM), in an appeal to the Wisconsin Personnel Commission (Commission). During a hearing on damages for the wrongful discharge, the Commission denied admission of evidence related to additional alleged misconduct committed by Brenon during his employment with UWM. UWM discovered this evidence after Brenon's initial discharge and argued that this evidence should have been admitted to limit any award of back pay to Brenon. The circuit court reversed the Commission's decision to exclude this evidence and remanded for a new hearing where UWM would be permitted to introduce this evidence. The court of appeals certified this appeal to this court.

153

¶ 2. We examine two issues. First, we examine whether the Commission properly excluded UWM's evidence on Brenon's subsequent misconduct when it was offered, without prior notice, during a hearing on damages to reduce the amount of back pay on Brenon's wrongful discharge. We conclude that the Commission properly exercised its discretion in excluding this evidence because Brenon did not receive proper notice, consistent with due process and the civil service statutes,[1] prior to UWM's introduction of this evidence. Second, we address whether the Commission properly denied fees and costs to Brenon based on its conclusion that UWM's disciplinary actions against Brenon were substantially justified. Granting great weight deference, we uphold this determination. Accordingly, we reverse the circuit court's decision to reverse and remand the matter for a new hearing, and we affirm the circuit court's decision to deny fees and costs.

I

¶ 3. Brenon began employment at UWM in October 1974 as a police cadet. At the time of his discharge, Brenon was serving with permanent status in class as a police sergeant.

¶ 4. In November 1995, UWM Police Chief Philip Clark received reports from various officers that Brenon had told inappropriate racist and sexist jokes. Clark directed Brenon's supervisor, Lieutenant Richard Sroka, to investigate and gather information.

---

[1] The civil service law is found under Wisconsin Stat. ch. 230 (1999–2000). Wisconsin Stat. § 230.34 specifically governs disciplinary actions taken against civil service employees.

¶ 5. Sroka sent Brenon an electronic mail message asking Brenon to meet with him.[2] A few days later, they met, and Sroka informed Brenon of the allegations against him. Sroka asked if the allegations were true, and Brenon admitted to telling the jokes. Sroka informed Brenon that this conduct was unsatisfactory and that it must stop. Brenon apologized, and Sroka stated that he thought Brenon's conduct would stop. Sroka told Brenon that he considered the matter closed and later described the meeting as a warning or an oral reprimand.

¶ 6. Immediately thereafter, Sroka reported to Clark about the meeting, including the oral reprimand. Clark, however, told Sroka to instead prepare a ten-day suspension without pay for Brenon. Sroka immediately reported Clark's disciplinary decision to Brenon, and Brenon then met with Clark, asking him to reconsider his decision. Clark's decision, however, remained final.

¶ 7. As a result, Sroka prepared a letter of suspension dated December 19, 1995, for Brenon. According to the letter, the suspension would take effect from January 22, 1996 to February 2, 1996. The letter offered the following explanation for the disciplinary action:

> This disciplinary action is based on your conduct, as related by four officers of this Department, that during the first week of November, 1995 you related racially demeaning jokes to them while in the performance of your duties as a police sergeant. Regardless of the motivation for relating such jokes, this conduct exhibits

---

[2] The text of the electronic mail message was as follows:

Dale, I need to meet with you on Friday morning, 12/08/95, regarding some recent personnel issues that I have just been made aware of. I will be away in Madison the rest of this week but will attempt to get in the office on Friday as early as I can. No big deal, won't take up much of your time, but please wait. Thank you.

unprofessional behavior, demonstrates a lack of sensitivity and creates a hostile environment within a diverse workplace.[3]

The letter also warned that "any further violation of work rules will result in further disciplinary action, up to and including discharge."

¶ 8. After this letter was issued, an investigation into Brenon's conduct continued. UWM received information from one female police cadet concerning sexist and racist comments and jokes told by Brenon as well as alleged dishonest conduct by Brenon in the performance of his duties. In addition, UWM received a report from another female officer who stated that Brenon harassed her and made several sexual comments and jokes to her. Several other officers were also interviewed.

---

[3] The letter specified the following rule violations:

This conduct constitutes violations of University of Wisconsin System Work Rules IV., B and J, which states:

B. Threatening, intimidating, interfering with, or using abusive language towards others.

J. Failure to exercise good judgement, [sic] or being discourteous in dealing with fellow employees, students or the general public.

These actions violate University Police Rules and Regulations, Article I – Conduct, Section 4, which states:

4. When dealing with any person, employees shall at all times conduct themselves in a courteous and helpful manner.

As these violations in and of themselves show cause for disciplinary action, the greater concern is that such behavior is not acceptable for a University of Wisconsin-Milwaukee Police Supervisor.

¶ 9. Clark and UWM Labor Relations Manager Shannon Bradbury met with Brenon. During the meeting, Brenon admitted to making several inappropriate jokes and comments, but denied telling racial jokes after notification of his suspension.

¶ 10. Clark later notified Brenon to report to a pre-disciplinary hearing on February 5, 1996. The notice identified the hearing subject matter as "allegations of [Brenon] making sexually explicit and demeaning comments and jokes to subordinates, . . . allegations of retaliation against subordinates in violation of UW System Work Rules and the University of Wisconsin-Milwaukee Sexual Harassment Policy, and continuing inappropriate activity subsequent to his suspension." Clark and Bradbury met with Brenon on February 5. During the meeting, Clark informed Brenon of the allegations against him and told him that UWM was considering disciplinary action against him ranging from a 30–day suspension without pay to discharge.

¶ 11. UWM discharged Brenon effective February 11, 1996. A February 9, 1996 letter provided the following explanation for this disciplinary action:

> This termination is based on other complaints of your conduct, untruthfulness uncovered in the course of the investigation of those complaints and your retaliation against subordinates who cooperated in those investigations. Specifically, complaints were received that subsequent to your learning of your 10 day suspension, you continued to tell jokes to subordinate officers substituting "Irishman" for other ethnic groups. Additionally, new complaints were received about your making sexually explicit and demeaning comments, telling ethnically and sexually demeaning jokes.
>
> . . . .

157

These examples are not an exhaustive list, but merely indicative of a much larger problem of continuing inappropriate and abusive treatment of subordinates and co-workers which cannot be tolerated in a UWM Police Department supervisor. Your behavior is all the more unacceptable in light of the frequent and numerous training programs you have attended on proper supervisory practices, appropriate interpersonal relations in the workplace, and dealing with the sensitive issues of diversity in a campus environment.[4]

---

[4] The letter specified the following rule violations:

This conduct constitutes violations of University of Wisconsin System Work Rules; I E., and IV., B., D., and J., which state:

Prohibited Conduct

I. E. Failure to provide accurate and complete information whenever such information is required by an authorized person.

IV. B. Threatening, intimidating, interfering with, or using abusive language towards others.

IV. D. Making false or malicious statements concerning other employees, supervisors, students or the University.

IV. J. Failure to exercise good judgement, [sic] or being discourteous in dealing with fellow employees, students or the general public.

These actions violate University Police Rules and Regulations, Article I – Conduct, Section 4, which states:

4. When dealing with any person, employees shall at all times conduct themselves in a courteous and helpful manner.

In addition, a complaint was made by one of your subordinates to the Office of Diversity/Compliance on December 28, 1995 regarding the hostile environment created by your demeaning, degrading and otherwise inappropriate racial, ethnic and sexually explicit language, as well as an intimidating and retaliatory management style. Their investigation and findings corroborated the findings of the University Police Department's investigation.

This continuing unprofessional behavior demonstrates a lack of sensitivity and creates a hostile work environment within a

¶ 12. Brenon appealed his suspension and his termination to the Commission pursuant to Wis. Stat. § 230.44(1)(c) (1999–2000).[5] He sought review on whether UWM had just cause for its disciplinary decisions and whether either decision constituted excessive discipline.

¶ 13. On October 7, 1997, Commissioner Donald Murphy issued a proposed decision and order on Brenon's appeal. In it, Commissioner Murphy concluded that UWM had violated Brenon's due process rights in issuing the initial ten-day suspension. He concluded that UWM failed to provide Brenon with adequate notice and a pre-disciplinary hearing prior to the suspension and therefore recommended that the Commission reject the suspension. However, he determined that, because Brenon had failed to exercise good judgment in violation of University of Wisconsin System Work Rule IV. J.,[6] this conduct was sufficient to warrant some disciplinary action. He deemed that the ten-day suspension was excessive discipline for this violation and that an oral or written reprimand was appropriate.

¶ 14. With respect to the termination, Commissioner Murphy concluded that UWM failed to prove all the allegations of misconduct that prompted Brenon's termination and that UWM had no just cause for the termination. The evidence, he noted, failed to establish that Brenon told derogatory ethnic jokes after notification of the ten-day suspension, that he retaliated

diverse workplace and is not acceptable for a University of Wisconsin-Milwaukee Police Supervisor.

[5] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[6] Commissioner Murphy noted that the evidence fell short of showing that Brenon violated the other work rules as alleged.

against any employees, and that he was otherwise untruthful during the investigation. As a result, Commissioner Murphy considered the termination as an excessive exercise of discipline and ordered the modification of Brenon's termination of employment to a suspension of ten days without pay. He also ordered a reinstatement of Brenon. The Commission, although amending some language, adopted the findings of the proposed decision and order. It reserved jurisdiction to consider a request by Brenon for costs and fees pursuant to Wis. Stat. § 227.485(3).

¶ 15. The Commission later rejected Brenon's request for costs and fees, concluding that UWM was "substantially justified" in taking its position on Brenon's conduct and therefore an award for fees and costs was not warranted. *See* Wis. Stat. § 227.485(1)(f) and (3). The Commission then granted leave to conduct discovery related to the remedy.

¶ 16. A remedy hearing was scheduled. Before the hearing, Commissioner Murphy proposed the following statement of issues for hearing: (1) the sum of Brenon's back pay and other credits, (2) the sum of UWM's mitigation damages and set-offs, and (3) the total sum of Brenon's remedy. After the May 18, 1999 hearing, Commissioner Murphy issued a proposed decision and order, recommending $159,533.64 in back pay to Brenon for the time period from February 11, 1996 to May 22, 1999, and additional back pay plus interest until Brenon's reinstatement. The decision noted that UWM had failed to mitigate its damages by reinstating Brenon and also ordered UWM to immediately offer reinstatement to Brenon to his former position or its equivalent.

¶ 17. During the remedy hearing, UWM attempted to introduce evidence related to alleged mis-

160

conduct committed by Brenon during his employment with UWM but was not discovered by UWM until after his termination. The misconduct consisted of Brenon's alleged practice of copying and removing confidential documents from UWM. UWM first questioned Brenon on this conduct on June 24, 1996, during a pre-hearing deposition. During this deposition, UWM demanded that Brenon return all confidential files. Brenon subsequently returned one box of documents.

¶ 18. When UWM sought to introduce evidence related to this misconduct at the remedy hearing, Brenon objected on the basis of relevancy. UWM responded that the evidence was relevant because it would show that UWM would have terminated Brenon for misconduct in June 1996 if he had still been employed there. Accordingly, on this "after-acquired evidence" theory, UWM argued that this evidence applied toward the issue of mitigation of damages in the wrongful termination case because it would limit an award of back pay at June 1996. Commissioner Murphy initially overruled Brenon's objection. Brenon, however, continued his argument on the objection. He asserted that he had not been charged with any misconduct on the issue and that the issue had not been included in the notice of hearing. After a recess, Commissioner Murphy sustained the objection and excluded the evidence. UWM made an offer of proof on the issue, during which Commissioner Murphy specifically asked whether it had been UWM's intent to present the document evidence in order to show just cause for terminating Brenon in June 1996. UWM answered affirmatively.

¶ 19. In the proposed decision and order on damages, Commissioner Murphy concluded that the decision to exclude the evidence at the hearing "was proper."

161

He stated that "[t]o have ruled otherwise would have been in deprivation of appellant's [Brenon's] job property rights without due process of law."

¶ 20. The Commission adopted the proposed decision and order. It also provided additional discussion on its decision to exclude the after-acquired evidence. Specifically, it concluded that this evidence, if admitted, would have unfairly required Brenon to address a significant new issue on which he had no prior notice. The Commission rejected UWM's arguments that Brenon had prior notice based on evidence in the record.[7] Instead, based on this evidence, the Commission held that it was reasonable for Brenon to conclude that the document removal issue would be addressed in a pending replevin action seeking these documents or in a new disciplinary action following his restoration to his former job. The Commission declined to address the question of whether introduction of this evidence would violate the civil service code. It stated:

---

[7] UWM supported its position that Brenon had proper notice that this evidence would be raised at the remedy hearing based on three evidentiary items. First, UWM cited the June 1996 deposition at which Brenon was asked about the documents. Second, UWM cited a June 20, 1998 letter from UWM to the Commission in opposition to appellant's motion for reinstatement, which stated in relevant part: "If ordered to return Brenon to the workplace at this time, UWM would be forced to consider initiating a formal investigation, possibly resulting in disciplinary action against him, for unauthorized possession of university property with regard to the records issue." Third, UWM cited a May 14, 1999 memo and settlement offer, which discussed the process that would be followed if Brenon were reinstated to his job. In relevant part, it stated: "After the final decision we also intend to reinstate your client and initiate the discipline process because of his gross violation of the records policies."

There is also a question as to whether it would violate the civil service code to sanction what would be in effect the retroactive addition of reasons for the discharge of the appellant. However, because the commission concludes that lack of notice precludes litigation of the issue of the missing documents at this point in the remedy process, it will not address the question of whether injecting this issue into this case at this time would violate the civil service code. (Citations omitted.)

¶ 21. UWM moved for reconsideration. In support of its motion, UWM pointed to newly discovered documents that Brenon recently provided to UWM that had been at his home.[8] UWM argued that Brenon should have disclosed these allegedly confidential documents in June 1996 and that this evidence provided a basis for the Commission to overturn its order for reinstatement and back pay. UWM also cited to *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352 (1995), to support its argument that the after-acquired evidence should have been admitted at the remedy hearing.

¶ 22. The Commission, however, held that the newly discovered documents did not provide a material difference to allow UWM to raise any issue surrounding the documents at that time. It maintained that UWM never raised the document removal issue before the remedy hearing and that it therefore waived this issue. The Commission also distinguished *McKennon,* noting that Brenon's case involved a discharge under the civil service code, requiring due process before any disciplin-

---

[8] UWM pointed to the fact that it had filed a replevin action on April 28, 1998, in Milwaukee County Circuit Court seeking the recovery of documents that had allegedly been removed from the workplace. In connection with this proceeding, UWM contended that Brenon had recently returned, on September 29, 1999, ten file boxes containing about 24,000 documents.

ary action. Such a limitation on back pay based on subsequent misconduct, the Commission determined, would effectively amount to an unlawful retroactive discharge requiring notice. UWM, the Commission stated, could not now add additional reasons for discharge after its initial notice of termination, Brenon's disciplinary hearing, and the hearings before the Commission. The Commission relied on *State ex. rel. Tracy v. Henry,* 219 Wis. 53, 262 N.W. 222 (1935), in reaching its conclusion.

¶ 23. UWM appealed the Commission's decision on the merits of the suspension and discharge and on the decision to exclude the after-acquired evidence to the circuit court (Case No. 99 CV 2959). Brenon appealed the Commission's decision on fees and costs to the circuit court (Case No. 00 CV 661). The cases were consolidated. The Circuit Court of Dane County, Judge Michael Nowakowski presiding, upheld the Commission's findings on the merits, concluding that the Commission's modifications to UWM's discipline of Brenon were reasonable. The court also affirmed the Commission's decision denying fees and costs to Brenon. The court, however, reversed the Commission's decision and order related to the back pay award. The court concluded that the Commission's refusal to consider evidence related to the document removal was an abuse of discretion. The court's decision was based in part on its conclusion that the Commission applied an incorrect rule of law by concluding that *Tracy* was applicable and by concluding that *McKennon* was inapplicable. It also concluded that the Commission failed to properly engage in a balancing of interests to determine whether the evidence was admissible in light of any surprise element of the evidence. The court remanded to the Commission for further hearings at which UWM

would be permitted to offer evidence in support of its after-acquired evidence theory.

¶ 24. The court of appeals certified this case to us. The court presented the following issue for certification: "whether the Personnel Commission is permitted to consider 'after-acquired evidence' when deciding the remedy for a civil service employee who was wrongfully discharged." We accepted certification on this issue and on the issue of whether Brenon is entitled to fees and costs.

## II

■

¶ 25. We rephrase the first issue. The first issue is whether the Commission properly excluded evidence of Brenon's alleged misconduct when it was offered, without prior notice, during a hearing on damages to reduce the amount of back pay for Brenon's wrongful termination. We review the decision by the Commission, not the decision by the circuit court. *Currie v. DILHR,* 210 Wis. 2d 380, 386, 565 N.W.2d 253 (Ct. App. 1997).

■

¶ 26. Admission of evidence is a matter of discretion with the Commission. *J.I. Case Co. v. LIRC,* 118 Wis. 2d 45, 48, 346 N.W.2d 315 (Ct. App. 1984). We uphold the Commission's discretionary decision if there is a reasonable basis for it. *Prahl v. Brosamle,* 142 Wis. 2d 658, 667, 420 N.W.2d 372 (Ct. App. 1987). A proper exercise of discretion must be based on facts appearing in the record and on the appropriate and applicable law. *Id.*

¶ 27. Our review, like UWM's arguments, focuses primarily on the legal bases for the Commission's decision, in particular the civil service statutes and the

due process clause. The Commission concluded that the attempted introduction of the after-acquired evidence on the alleged document removal amounted to a retroactive termination of Brenon. As a result, it excluded this evidence in part because UWM had not provided notice to Brenon as required under the civil service statutes and the due process clause. Our review of whether the Commission properly based its decision on this law requires a determination on a question of law, that is, whether UWM was required to provide notice, following due process and civil service statutory requirements, to Brenon before it could introduce this evidence during the remedy proceeding. We first resolve this question of law before we address the Commission's discretionary decision. We also examine the additional legal bases for the Commission's determination, namely the *Tracy* decision and waiver.

¶ 28. We are not bound by an administrative agency's conclusions when reviewing questions of law. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 244, 493 N.W.2d 68 (1992). Instead, we have applied three levels of deference to conclusions of law and statutory interpretation by an agency. *Id.* "First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to 'great weight.' " *Id.* Second, if the agency determination is very nearly one of first impression, the agency determination is entitled to "due weight." *Id.* Third, if the issue is one of first impression for the agency and the agency lacks special expertise or experience in its determination, our standard of review is de novo. *Id.* at 245.

¶ 29. The Commission argues that it has experience applying constitutional standards of due process and therefore its decision on this issue should be accorded due weight deference. However, the issue before us is one of first impression, that is, whether standards on due process and the civil service statutes even apply, requiring notice, before UWM could introduce the after-acquired evidence on Brenon's misconduct. The Commission has not provided any support to show that it has experience in addressing this issue. As a result, we apply a de novo standard. In turn, we review this question independently, while benefiting from the analyses of the Commission and the circuit court. *Auman v. School Dist. of Stanley-Boyd,* 2001 WI 125, ¶ 6, 248 Wis. 2d 548, 635 N.W.2d 762.

¶ 30. Applying a de novo standard, we conclude that UWM was required to provide notice to Brenon as contemplated by the civil service statutes and as required under due process before it could introduce evidence related to his alleged misconduct in copying and removing confidential documents from the UWM Police Department. Notice and a proper hearing addressing this misconduct is required to remain faithful to the due process interests of civil service employees in Wisconsin and to remain consistent with the policies of security of tenure and impartial evaluation prior to termination. *See Watkins v. Milwaukee County Civil Serv. Comm'n,* 88 Wis. 2d 411, 420, 276 N.W.2d 775 (1979).

¶ 31. In reaching this conclusion, we distinguish *McKennon,* in which the United States Supreme Court allowed after-acquired evidence, but did so in the context of at-will employment. In *McKennon,* McKennon

was discharged from Banner Publishing Company when she was 62 years old. *McKennon, 513 U.S.* at 354. She sued alleging that her discharge violated the Age Discrimination in Employment Act of 1967. *Id.* During a subsequent deposition, Banner discovered that McKennon had copied and removed several confidential documents. *Id.* at 355. A few days later, Banner terminated her (again) for removal and copying records. *Id.* After Banner conceded its discrimination, the District Court granted summary judgment to Banner and concluded that, because of her subsequent termination, McKennon was not entitled to any remedy, including back pay. *Id.* This judgment was affirmed on appeal. *Id.*

¶ 32. The Supreme Court reversed, concluding that McKennon could obtain relief despite her employer's discovery of evidence to support her termination subsequent to her initial termination. *Id.* at 361–63. The Court's decision balanced competing interests: an employee's interest in deterring and gaining compensation for discriminatory conduct and the employer's interest in obtaining relief from an employee's inevitable discharge. *Id.* at 362. The employer, however, carried the burden when it sought to rely on after-acquired evidence. *Id.* at 362–63. In this respect, the Court stated that an employer must "establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* Due process considerations were never at issue. *Cf. Vorwald v. Sch. Dist. of River Falls,* 167 Wis. 2d 549, 557, 482 N.W.2d 93 (1992) (at-will employees have no property interest in employment).

¶ 33. Due process considerations and protections are certainly at issue in this case however. Brenon is a

permanent civil service employee, and as such, he has a property interest in his employment pursuant to statute. *See* Wis. Stat. § 230.34(1)(a) (such employees "may be removed, suspended without pay, discharged, reduced in base pay or demoted only for just cause"); *see also Arneson v. Jezwinski,* 225 Wis. 2d 371, 393, 592 N.W.2d 606 (1999) ("An employee who may be dismissed only for 'just cause' has a property interest in continued employment which is protected by the due process clause of the federal constitution."). Because of this property interest, the statutes require the appointing authority to provide notice to the employee prior to any disciplinary action. *See* Wis. Stat. § 230.34(1)(b) (requiring the appointing authority to "furnish to the employee in writing the reasons for the [disciplinary] action"). Further, the employee is entitled to a hearing permitting him to address the employer's reasons for any disciplinary action. These pretermination protections are required under the due process clause pursuant to *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985). *See Hanson v. Madison Serv. Corp.,* 150 Wis. 2d 828, 840–46, 443 N.W.2d 315 (Ct. App. 1989).

¶ 34. We discuss *Loudermill* briefly. In *Loudermill,* Loudermill was hired to work as a security guard—a classified civil servant position under Ohio law—for the Cleveland Board of Education. *Loudermill,* 470 U.S. at 535. Shortly thereafter, he was terminated when the Board of Education discovered that he had been convicted of a felony and had failed to report this conviction as required on his job application. *Id.* Loudermill was not afforded an opportunity to respond to the charge or challenge the dismissal. *Id.* He filed a federal suit, claiming that Ohio law failed to afford him, as required by the constitution, the opportunity to respond to the charges prior to his removal. *Id.* at 536.

169

The District Court dismissed the claim, and the Court of Appeals reversed. *Id.* at 536–37.

¶ 35. The Supreme Court affirmed, concluding that Loudermill was not provided proper due process procedures before his termination. The Court noted that Ohio law specifically conferred a property right to Loudermill in his employment,[9] and accordingly, he could not be, pursuant to due process guarantees, deprived of this substantive right except pursuant to constitutionally adequate procedures. *Id.* at 538, 548. The Court concluded, however, that the procedures required did not need to be elaborate; they only need to be "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46. The essential elements were notice and an opportunity to respond. *Id.* at 546. The Court noted the private interests in retaining employment—specifically the severity of depriving a person of the means of livelihood. *Id.* at 542–43. Indeed, it is this specific property interest that necessitates notice and hearing for a civil servant in Wisconsin prior to termination.

¶ 36. Brenon's property interest in his employment and livelihood existed not only when UWM sought to initially terminate him, but also when it sought to introduce evidence of misconduct to show termination to limit his award of back pay. As a result, UWM could not introduce evidence of his subsequent misconduct

---

[9] The Ohio statute at issue entitled Loudermill to retain his position "during good behavior and efficient service," and could not be dismissed "except . . . for . . . misfeasance, malfeasance, or nonfeasance in office." Ohio Rev. Code Ann. § 124.11 (West 1984); *see Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985).

without adequate notice and hearing. Adequate notice and hearing must follow the due process requirements discussed in *Loudermill*. Such notice and hearing is consistent with policies of security of tenure and impartial evaluation prior to deprivation of this property interest in employment. *See Watkins*, 88 Wis. 2d at 420. UWM concedes that it did not provide any such notice to Brenon prior to its introduction of this evidence at the remedy hearing. Adequate notice should have been provided to Brenon at the time that UWM would have acted on the misconduct. The Commission relied on this lack of notice in justifying its decision to exclude the evidence. Lack of notice provided a reasonable basis for the exclusion of the evidence.

¶ 37. Requiring notice in this case is consistent with *Tracy*, which the Commission also cited in making its determination. In *Tracy*, the state treasurer discharged several civil service oil inspectors without reason. *Tracy*, 219 Wis. at 55.[10] The discharges, however, were found illegal. *Id.* In a subsequent investigation, the treasurer found that, for some of the inspectors, there had existed a just cause for their discharges at the time of the original illegal discharges, but that a reasonable time had expired for those inspectors to provide an explanation pursuant to Wis. Stat. § 16.24 (1933). *Id.* at 56. The treasurer therefore notified these

---

[10] The statute at issue was Wis. Stat. § 16.24(1) (1933), which stated:

> No permanent subordinate or employe ... shall be removed, suspended without pay, discharged, or reduced in pay or position except for just cause, which shall not be religious or political. In all such cases the appointing officer shall, at the time of such action, furnish to the subordinate his reasons for the same and allow him reasonable time in which to make an explanation. The reasons for such action and the answer thereto shall be filed in writing with the director prior to the effective date thereof.

inspectors of their subsequent discharges by letter. *Id.* Nevertheless, the circuit court ordered the treasurer to reinstate these inspectors as of the date of their original discharges, concluding that the subsequent discharges did not affect their rights to gain relief from the time of the original discharges to the time of the alleged subsequent discharges. *Id.* at 57–59. The primary question was whether the subsequent discharges defeated the court's reinstatement of these inspectors to the time of the original discharges. *Id.* at 59–60. The court held the subsequent discharges would not operate retroactively to be effective on the date of the original discharges, and that, even though valid, the subsequent discharges should not affect the reinstatements. *Id.* at 61, 63.

¶ 38. For our purposes, the court's holding is important insofar as it showed that the subsequent discharges were valid because the treasurer complied with the notice requirements. *See id.* at 63 (the reinstatement could occur despite "just and valid causes for discharge" which were "effective upon compliance with the conditions precedent and the expiration of time prescribed under [Wis. Stat. § 16.24(1) (1933)]"). Thus, although *Tracy* does not discuss an after-acquired evidence question, it does lend support to the conclusion that notice must be provided on a subsequent discharge in order to limit back pay. Therefore, the Commission also appropriately cited *Tracy* as consistent with its holding in this case.

¶ 39. Finally, the Commission appropriately relied on UWM's waiver as a legal basis in excluding the after-acquired evidence from the remedy hearing. Before the remedy hearing, Commissioner Murphy specifically enumerated the issues for discussion at the hearing. Extensive briefing by both parties followed.

UWM never informed Brenon that it intended to present evidence related to Brenon's alleged document removal in order to limit its damages on back pay. As the Commission noted, UWM's evidence instead indicated that the document removal issue would be addressed during the replevin action or in a subsequent disciplinary action. As a result, UWM waived this issue.

¶ 40. In sum, we conclude that the facts in the record and the legal basis (the civil service code, due process concerns, *Tracy,* and waiver) which the Commission relied on support its decision to exclude the after-acquired evidence in this case. Accordingly, we hold that the Commission's decision to exclude the after-acquired evidence was not an erroneous exercise of discretion.

### III

¶ 41. The second issue that we address is whether the Commission erred in denying fees and costs to Brenon for successfully defending claims of wrongful termination on his misconduct involving the telling of racial and sexist jokes. Brenon sought fees and costs pursuant to statute.[11] He is entitled to fees and costs unless UWM can show that it was "substantially justified in taking its position . . . ." Wis. Stat. § 227.485(3).

---

[11] Wisconsin Stat. § 227.485(3) provides:

> In any contested case in which an individual, a small non-profit corporation or a small business is the prevailing party and submits a motion for costs under this section, the hearing examiner shall award the prevailing party the costs incurred in connection with the contested case, unless the hearing examiner finds that the state agency which is the losing party was substantially justified in taking its position or that special circumstances exist that would make the award unjust.

"Substantially justified" means "having a reasonable basis in fact and law." Wis. Stat. § 227.485(2)(f). To meet this burden, UWM must show (1) a reasonable basis and truth for the facts alleged; (2) a reasonable basis and law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced. *See Sheely v. DHSS*, 150 Wis. 2d 320, 337, 442 N.W.2d 1 (1989). The Commission concluded that UWM had met this burden and denied costs to Brenon. We now review this decision by the Commission.

¶ 42. The question of whether UWM was substantially justified in its position requires an interpretation of the statute. Statutory interpretation presents a question of law. *See Dodgeland Educ. Ass'n v. WERC*, 2002 WI 22, ¶ 22, 250 Wis. 2d 357, 639 N.W.2d 733. As mentioned, there are three levels of deference under which we review questions of law: "great weight," "due weight," and de novo. *Id.* We conclude that the Commission's decision is entitled to great weight deference on this issue.

¶ 43. An agency's conclusions on questions of law are entitled to great weight deference when (1) the agency is charged by the legislature with the duty of administering the statute; (2) the interpretation of the statute is long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Kannenberg v. LIRC*, 213 Wis. 2d 373, 384, 571 N.W.2d 165 (Ct. App. 1997). In this case, UWM and the Commission have provided numerous instances in which the Commission has applied this statute, show-

ing its long-standing experience. In addition, in such instances, the Commission employs its expertise and knowledge in interpreting the statute, determining whether agencies are substantially justified in taking its position. Finally, the Commission's interpretation will provide consistency in application of this statute. For these reasons, we conclude that the Commission's interpretation is entitled to great weight deference. Accordingly, we uphold the Commission's interpretation of the statute if it is not contrary to the clear meaning of the statute, even if another interpretation is more reasonable. *Id.* In other words, we will uphold the Commission's decision if it has " 'any rational basis.' " *Dodgeland,* 2002 WI 22, ¶ 30 (citation omitted).

■■

¶ 44. The Commission concluded that UWM was substantially justified in its position. In reaching this determination, it first examined its decision to reject the ten-day suspension issued against Brenon. It noted that its key reason for finding no just cause for the suspension was that UWM failed to provide sufficient pre-disciplinary process to satisfy due process and statutory requirements. The primary reason for such notice, the Commission concluded, is to provide an opportunity for the employee to respond to the alleged misconduct and to try to persuade the employer to impose a lesser penalty. Based on this reasoning, the Commission then concluded that the pre-disciplinary process provided by UWM in this case "possessed enough of the attributes of a sufficient due process proceeding to support a conclusion that respondent [UWM] had a reasonable basis in law and fact for contending that the just cause standard had been met in this regard." The Commission discussed the "attributes" present in this case as follows:

> Under the facts present here, appellant [1] was given notice of the specific allegation against him, i.e., the . . . [racist] joke he had repeated; [2] was given an opportunity to answer the allegation during his meeting with Mr. Sroka; [3] was made aware as a part of his meeting with Mr. Sroka that the purpose of the meeting was to discuss this particular allegation and what consequence should follow; [4] was provided notice, although not until the end of his meeting with Mr. Sroka, of the fact that a ten-day suspension was being contemplated; and [5] was provided an opportunity, through his meeting with Chief Clark, to persuade the employer to impose a lesser penalty.

Based on these "attributes," the Commission determined that UWM was substantially justified in its position and it denied Brenon's application for costs and fees on the ten-day suspension.

¶ 45. Brenon disagrees with this conclusion for three main reasons.

¶ 46. First, Brenon asserts that his notice was inadequate. His only notice, he argues, was an electronic mail message from Sroka telling him that he wanted to talk to him about "a personnel matter" but that it was "no big deal." Further, although Sroka informed him of the allegations against him during their meeting, Brenon argues that he was not notified that Clark was actually considering suspension or termination. Adequate notice, he asserts, would have provided him with the opportunity to prepare responses to the allegations and to obtain counsel prior to the meetings.

¶ 47. Second, he argues that his meetings with Sroka and Clark provided no real opportunity for him to be heard. In particular, he argues that his meeting with Clark was meaningless because Clark had no authority to change any disciplinary decision. UWM

administration officials, Brenon contends, had determined his discipline before the meeting, and therefore, he was not afforded any meaningful hearing prior to discipline.

¶ 48. Third and finally, Brenon argues that UWM failed to follow the guidelines for disciplinary procedure imposed by the collective bargaining agreement that UWM voluntarily applied to non-union employees. Under these union rules, Brenon contends that discipline must be applied progressively, which first requires a reprimand before suspension. Brenon asserts that an agency is not substantially justified in its position if it fails to follow its own rules, citing *Stern v. DHFS,* 212 Wis. 2d 393, 569 N.W.2d 79 (Ct. App. 1997).

¶ 49. Despite these arguments, when granting great weight deference to the Commission's determination, we conclude that its decision must be upheld. In making its determination, the Commission looked collectively at all of the occurrences before UWM suspended Brenon. The Commission did not conclude that these occurrences were sufficient to provide Brenon with due process. It only determined that these occurrences were sufficient for UWM to conclude that Brenon had been adequately notified and heard and that it could then suspend him. We uphold this decision.

¶ 50. Certainly, UWM could have and should have provided Brenon with additional notice of the allegations against him prior to any meetings in order for Brenon to adequately prepare. However, Sroka fully informed Brenon of the seriousness of his conduct at their meeting. Sroka then provided Brenon with an opportunity to respond and then warned him that his conduct must stop. Sroka informed Brenon that he was then going to talk with Clark about the meeting. Brenon later met with Clark, attempting to persuade

Clark to change the disciplinary decision. Clark testified that he made the ultimate decision on discipline. Further, the fact that Clark met with Brenon indicates that Clark was willing to at least consider Brenon's explanation and change his disciplinary decision. Indeed, additional notice may have provided Brenon with more time to prepare. Further, under these facts, a different reasonable interpretation could have been reached by the Commission. However, we conclude that the Commission's decision had a rational basis. Based on the above facts, the Commission could conclude that UWM had a reasonable basis to issue a ten-day suspension against Brenon. We therefore uphold this determination.[12]

¶ 51. The Commission also denied the application for fees and costs as it related to the subject of discharge. It concluded that UWM was substantially justified in taking its position in light of representations from co-workers that Brenon was continuing to engage in inappropriate behavior. The Commission noted that some of these allegations were not corroborated; however, it held that UWM had no reason to doubt the reliability of these allegations at the time of the discharge. The allegations, it concluded, came from various sources and were consistent with Brenon's past behavior. Thus, UWM acted reasonably by taking steps

---

[12] *Stern v. DHFS*, 212 Wis. 2d 393, 569 N.W.2d 79 (Ct. App. 1997) does not change our holding. There, the agency's failure to follow its own rules provided only part of the court's basis for not finding the agency's actions "substantially justified." *Stern*, 212 Wis. 2d at 399–403. Here, even if UWM's failure to follow union rules could provide the entire basis for finding that it was not substantially justified in its actions, Brenon only alleges that UWM "voluntarily" applied these rules, not that it was required to apply them, in this instance.

to discharge Brenon because "discharge was the next step in the progressive discipline process . . . ."

¶ 52. Brenon contends that UWM was not substantially justified in taking this position, but does not significantly develop this argument. In essence, he argues that because the initial suspension was not justified and was excessive, termination was clearly inappropriate. He also asserts that termination was not necessarily the next step in the progressive discipline. As a result, termination was not justified.

¶ 53. Again, applying great weight deference, we conclude that the decision by the Commission must be upheld. UWM's subsequent investigation of Brenon's conduct after it issued the suspension revealed several of his co-workers, in particular two female cadets, had serious complaints about Brenon's inappropriate conduct. In its decision to terminate, UWM also relied on the inappropriateness of the comments in light of Brenon's supervisory position. Again, in light of these facts and the other facts relied on by the Commission, we cannot conclude that the Commission's decision on this issue was without any rational basis. The decision to terminate, in the wake of the ten-day suspension, was reasonable. We therefore deny Brenon's request for fees and costs as it relates to the decision on discharge as well.

## IV

¶ 54. In conclusion, we reverse in part and affirm in part the decision of the circuit court. We reverse the circuit court's decision on the after-acquired evidence issue. As a result, we conclude that the Commission properly denied admission to UWM's evidence showing prior misconduct by Brenon to support its argument

179

that his back pay should be limited. Notice of such misconduct was required before such evidence could be introduced. We affirm the circuit court's decision denying costs and fees to Brenon. The Commission correctly determined that UWM was substantially justified in suspending Brenon and in terminating him. We uphold these determinations.

*By the Court.*—The decision of the circuit court is reversed in part and affirmed in part.

¶ 55. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE, did not participate.

¶ 56. DIANE S. SYKES, J. *(dissenting).* I respectfully dissent. I read nothing in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985,) or *State ex rel. Tracy v. Henry,* 219 Wis. 53, 262 N.W. 222 (1935), that precludes application of the after-acquired evidence doctrine of *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352 (1995), in a remedy hearing under the civil service code in order to determine the proper measure of back pay damages for wrongful termination.

¶ 57. The *McKennon* after-acquired evidence rule allows later-discovered evidence of employee misconduct supplying independent justification for termination to be admitted on the issue of remedy for an earlier wrongful termination. *McKennon,* 513 U.S. at 360–61. "The employee's wrongdoing must be taken into account . . . lest the employer's legitimate concerns be ignored." *Id.* at 361. Accordingly, in determining a back pay remedy for an illegal employment termination—in *McKennon* it was a termination in violation of the Age Discrimination in Employment Act—the after-acquired evidence rule allows admission of evidence that the

employee would have been terminated on separate, later-discovered grounds. *Id.* at 363.

¶ 58. As the majority notes, *Loudermill* held that due process requires notice and an opportunity for " 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill,* 470 U.S. at 542. However, "the pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 545. "The essential requirements of due process . . . are notice and an opportunity to respond." *Id.* at 546. There is no reason why the notice and hearing requirements of due process cannot be satisfied within the context of a remedy hearing. As long as the employee has notice and an adequate opportunity to respond on the after-acquired evidence issue, there can be no due process violation.

¶ 59. As the circuit court in this case held, applying the after-acquired evidence rule is fully consistent with *Tracy.* There, this court was concerned with the issue of whether a subsequent legal discharge could operate retroactively to the date of a prior illegal discharge. *Tracy,* 219 Wis. at 54. The court said no; a civil service employee illegally discharged is entitled to recovery from the time of the illegal discharge up until the subsequent legal discharge as if he had been reinstated during that time period. *Id.* at 62.

¶ 60. Application of the after-acquired evidence rule here does not operate to make a subsequent legal discharge retroactive to the date of the illegal discharge. UWM seeks only to limit Brenon's back pay recovery to damages from the date of the original wrongful discharge to the date that it says it could validly have discharged him on the independent, newly-discovered grounds. This does not run afoul of *Tracy.* Indeed, the

181

public employees in *Tracy* were limited to a back pay recovery "as of the date of their original illegal discharge, as employees in the state civil service . . . up to the time of a valid discharge." *Id.* at 62.

¶ 61. The real question here is whether Brenon was "ambushed" with the after-acquired evidence issue at the remedy hearing.[1] That UWM considered the "purloined documents" as serious misconduct certainly came as a surprise to no one. The parties had been waging a pitched battle over the return of the documents ever since the issue arose in Brenon's June 1996 deposition. The documents were the subject of a replevin action initially filed in 1997 and re-filed in 1998, which Brenon resisted. As the majority notes, Brenon had originally returned a single box of UWM documents upon demand after his deposition; very shortly after the Commission's decision in this matter, Brenon capitulated on the replevin action and disgorged ten more boxes of UWM documents. Majority op. at ¶¶ 17, 22 n.8. In addition, as the majority also notes, in arguing against any reinstatement order in this matter, UWM put Brenon on notice that if reinstated, he would immediately face disciplinary action for unauthorized possession of university property. Majority op. at ¶ 20 n.7.

---

[1] I do not understand the majority to have created a rule that the after-acquired evidence doctrine can *never* be applied in the context of civil service or other public employment. Rather, the majority has upheld the Commission's decision to exclude the evidence in this case as a proper exercise of discretion. Majority op. at ¶ 40. For an example of the application of the *McKennon* after-acquired evidence rule in the context of a protected civil service employee, see *Brogdon v. City of Klawock,* 930 P.2d 989 (Alaska 1997). *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352 (1995).

¶ 62. It may well be that Brenon assumed the dispute over the documents would be litigated outside the forum of the remedy hearing, and was therefore surprised when the matter came up at that hearing as after-acquired evidence for purposes of limiting his back pay recovery. As the circuit court noted, however, exclusion of evidence as remedy for unfair surprise is usually appropriate only if the alternative of a continuance would cause undue delay or if the surprise results in a danger of prejudice or confusion of issues. *Magyar v. Wisconsin Health Care Liability Ins. Plan,* 211 Wis. 2d 296, 303, 564 N.W.2d 766 (1997).

¶ 63. Ordinarily, "the drastic measure of excluding a witness should be avoided by giving the surprised party more time to prepare, if possible." *Id.* at 303–04. *Magyar* held that "continuance is usually the more appropriate remedy for surprise; exclusion should be considered only if a continuance would result in a long delay." *Id.* at 304. The determination of whether to exclude evidence or grant a continuance to allow the surprised party to prepare is made by evaluating "whether the surprise was unfair, and, if so, whether the unfair surprise outweighed the probative value of the evidence." *Id.* Here, neither the hearing examiner nor the Commission applied this balancing test or considered the alternative of a continuance.

¶ 64. I would conclude that any unfair surprise on Brenon's part does not outweigh the probative value of the after-acquired evidence in this case. The after-acquired evidence relating to Brenon's unauthorized possession of confidential university documents is highly probative of the proper measure of Brenon's back pay damages, provided UWM can prove that it could and would have validly terminated him on these independent grounds. Despite the lengthy and convoluted

procedural history of this matter, there is no allegation that UWM's failure to disclose its after-acquired evidence theory violated any scheduling order or discovery rule. A short continuance to allow Brenon to prepare to address the issue would have accomplished the dual purpose of giving him his due process notice and opportunity to respond, and would have mitigated any unfair surprise.

¶ 65. I agree completely with the majority's resolution of the second issue in the case regarding the denial of Brenon's costs and fees, which is consistent with the circuit court's analysis. I would affirm the circuit court's decision in its entirety.